## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## AT MEMPHIS

Kim Brown,

     Plaintiff.

TRIAL BY JURY  DEMANDED

CASE NO. _____

v.

Memphis City Schools,
Shelby County Unified School System
    Defendants.

## COMPLAINT

### JURISDICTION AND VENUE

1.   This is an employment discrimination/retaliation complaint arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"),  The Plaintiff also is including  retaliation, unlawful termination, defamation  and other state law claims etc. This Court has jurisdiction under 28 U.S.C. § 1331 and 1343. Venue is proper under 42 U.S.C. § 2000e (Title VII) as well as 28 U.S.C. § 1391.

### THE PARTIES

2. Plaintiff Kim Brown is a resident of Memphis, Tennessee County of Shelby with an address of 6430 Freelark ln., Memphis, TN. 38115

3.  Defendant Memphis City Schools, (hereinafter also MCS) effective July 1, 2013 known as the Shelby County Unified School System (aka) Shelby County Unified District, Shelby County Schools, It is located at 2597 Avery Avenue, Memphis, TN. 38112 and 160 S. Hollywood, Memphis, TN 38112

## FACTUAL ALLEGATIONS

4.  Kim Brown was suspended without pay because he complained about illegal activities at Charjean Elementary and was suffered to adverse action because of his gender and ultimately suspended without pay or insurance benefits, and recommended for termination based on fraudulent/forged letters submitted.

5.  Kim Brown (hereinafter both Plaintiff and Mr. Brown) is a tenured teacher for Memphis City Schools and has been a teacher continuously since 2002 around ten years.

6. Mr. Brown has exhausted his administrative remedies. *(See Attached Right To Sue Letter)*

7.  Mr. Brown is licensed by the state of Tennessee to be an administrator/principal K-12; and as April of 2013 licensed/endorsed to teach Special Education grades K-12, and in licensed to teach any subject grades K-8.

8.  Also, as of July 2, 2013 Mr. Brown received a passing score on the Praxis the national teacher's examination to teach English to Learners of Second Languages (ESL) and is now/will be able to teach in that area as well.

2

9.    Special Education and ESL are high demand areas in school-systems nationwide. Mr. Brown has not had an opportunity to practice in these areas as will be explained in this Complaint.

10.   Mr. Brown has voluntarily moved to a different school in the school-system every year for around the past four years and enjoyed going to a teach at a different schools every year, to see the inner-workings of schools in that Mr. Brown is licensed as an administrator/principal by the state of Tennessee and was considering about applying for a job in the area which is why he voluntarily moved frequently to various schools to see such inner-workings.

11.   Mr. Brown "voluntarily surplused" himself at the end of the 2011-2012 school year and was assigned to a 2nd grade position Charjean Elementary for the 2012-2013 school year. Mr. Brown has been basically a "trouble-free" employee and has **never** been referred to the board of education for disciplinary action for any reasons.

12.   Previously a surplused teacher was guaranteed placement for the next school year. Sometimes it has an negative connation with some administrators because they think it may mean the teacher has problems because they moved around. This was not the case with the Plaintiff.

13.   Charjean Elementary is a high poverty school located in a high crime area in the inner-city of Memphis Tennessee. Around 99% of the students qualify for free lunch.

14.   2012-2013 school-year was Ms. Allen's first time as a principal anywhere. She was assigned to Charejean a few days before the start of the school-year.

15. Ms. Allen started harassing the Plaintiff over the course of weeks beginning at the beginning of the school-year not limited to making frequent comments that since he was a "A Man" the students suppose to be scared of you. And that "You a Man Too" you suppose to be more effective than the women in classroom management in general.

16. The Plaintiff was discriminated against in that all the men teachers were **required**/mandated to be outside on duty after school while the women teachers were not. Sometimes it was hot and very cold, but the women had no such requirements mandated upon them that they stay out the entire time.

17. Also, there were three second grade teachers two men and one female. The female teacher was given a class of predominately Hispanic children and few Black students. The men which included Mr. Sneed and the Plaintiff were given all Black students.

18. The students were separated by race within the school rather than random selection. The black boys (and some girls) in the inner city usually have more discipline problems than the Hispanics and are harder to control and teach especially the males This had a disparate impact in the Plaintiff.

19. Around October 2, 2013 the Plaintiff had his first evaluation and requested that his evaluation be video recorded. It was video recorded. Ms. Allen gave the Plaintiff a low evaluation, Some of the areas that Ms. Allen rated low, the video of the lesson shows something entirely different that does not support the observer's low score.

20. For instance not limited to, Ms. Allen stated the students were "acting up" getting up and misbehaving, however the video of the lesson does not show this.

4

*( The Plaintiff also note that some of his evaluation scores from the first lesson have mysteriously went up to higher scores from "twos" to "threes" although there are still low areas)*

21.   The Plaintiff filed a formal grievance with the Memphis Educational Association on October 10, 2013 in the grievance the Plaintiff asked for a transfer to a different school and also appealing his low evaluation scores.

22.   Under state law if a teacher's **overall** evaluation (not just class observations) score is a "2" or under meaning "below expectations" the teacher can be recommended for dismissal.   The classroom observations contribute significantly to the overall evaluation, but this is not the only factor. There are several other factors that contribute to the overall score.

23.   This score is given at the end of the school-year.  This new type of evaluation system has only been in practice for two years. The Plaintiff has made a "3"  which is "meeting expectations" for each end school year checkout.   *(See Attached Exhibit 2, End of year TEM Scores)*

24.   The Plaintiff was not transferred in October and around January 4, 2013 the Plaintiff started having problems again, with Ms. Allen again. Ms. Allen started yelling at the Plaintiff without cause, and constantly mentioning the Plaintiff moving from school to school, and being "A Man" meaning he was suppose to outshine the women teachers, and be more effective in general because of his gender.

5

25. Mr. Brown went to the director of Labor Relations on around January 7, 2013 to file a complaint on Ms. Allen. The Plaintiff also told about what he believed were illegal activities going on at Charjean Elementary School.

26. The Plaintiff reported that Charjean was still using corporal punishment despite corporal punishment being banned by Memphis City Schools. The Plaintiff as a licensed administrator knew immediately that this was wrong and had previously mentioned such to the principal. She stated "I'll get back with you."

27. Rachel Williams the secretary for Charjean Elementary was suppose to accompany the Plaintiff on his office visit to the Labor Relations office to report she was assaulted by the Principal, but she became afraid at the last minute and decided not to come.

28. The Plaintiff took it upon himself to inform the office of Labor Relations of Rachel William's allegations. That she told him personally that she had been assaulted by Ms. Allen. The Plaintiff had spoken with the school Counselor, building engineer and other teachers who related **that they had already been told** the news of the assault by the secretary Rachel Williams. One person stated they urged her to file a police report but she was afraid.

29. Rachel Williams also stated to the Plaintiff personally. Ms. Allen would constantly state to her throughout the year "I'll put Non-re-elect on you" "I'll put non-re-elect on you".

30. The Plaintiff informed the school systems office of labor relations about the assault. Mr. Brown stated that this assault was affecting his ability to properly do his job in that

Ms. Allen would yell at him in his face and Mr. Brown had fears that *he would* be assaulted while she was yelling at the Plaintiff.

31.  The Plaintiff was rebuffed in his allegations by the Labor Relations department.   It is also the policy of the district and the Labor Relations office to inform the principal of all allegations made by teachers  All emails, **and complaints** about principals *are actually given and conveyed*  to the principals for their response.  They actually inform principals on everything alleged.  With Rachel Williams it was stated  "she have to come in."

32.  The Plaintiff also asked for a transfer to different school in this meeting and was denied. However, labor relations did tell the Plaintiff that he could request someone else to perform his remaining evaluations.. *(See attached Emails)*

33.  The next day the Plaintiff informed the Principal Ms. Allen via email and the director of Labor Relations that he was requesting someone else to do his evaluations. The Plaintiff also sent a follow up email the next day to the director of labor relations stating that he was being harassed and in a hostile working environment and requesting such a transfer *(See Attached  Emails)*

34.  Mr. Brown went a step further and *went directly* in person  to Ms. Allen supervisor's office at the regional office and complained about Ms. Allen's conduct  there also, and the things going on at the school.

35.  The Plaintiff  met with a guy he believes is Michael Hawkins and stated how he is being harassed. Mr. Hawkins took notes and stated he would talk to her about the

grievances that was stated in the meeting. This included things the Plaintiff had previously informed the office of labor relations about.

36. The very next day January 8, 2013, Ms. Allen called the Plaintiff into her office and started screaming at the "top of her lungs" that no one was going to evaluate him but her. She started belittling the Plaintiff about moving from school to school" and being "a man" letting women "outdo" him and sending emails etc.

37. The Plaintiff had to step out of the meeting and called Ms. Barbakous a teacher at the school who is also a Memphis Educational Association Representative. Ms. Barbakous politely asked her if she could watch her tone. Ms. Allen calmed down after she came into the meeting.

38. On January 9, 2013 Ms. Allen came into the Plaintiff's classroom and did an unannounced formal evaluation and gave the Plaintiff low scores overall in almost every area, despite the Plaintiff meeting the rubric expectations, and the student's conduct was perfect. A tenured teacher suppose to receive two announced and two unannounced evaluations every year.

39. Ms. Allen also made the statement that "I told you in October that I would consider changing your evaluation score, You couldn't beat that, but since you want to run down to the board, I'm not changing anything."

40. Amazingly, Ms. Allen **never** came again to the Plaintiff's classroom **to do any informal** evaluations whatsoever after the January complaints/incidents. She only came

to do two remaining formal evaluations and **never** came again after the Plaintiff complained to her supervisor and the labor relations office.

41. Around February 1, 2013, Ms. Allen recommended that Mr. Brown participate in a program called PAR, (Peer Assistance Review), in which a teacher can receive assistance from a teacher in the district who had high evaluation scores, in order to get their scores high also.

42. The PAR program has never before been in existence and it was toward the latter end of the school year when the program started. It started around the end of February.

43. Mr. Brown did not have to participate in the PAR program, it was optional but was told in a meeting by the PAR teacher Ms. Kecia Helminski that he would have to sign a form stating he chose not to participate and this would go in his file, and was told that it would not look good for him to refuse assistance. Mr. Brown participated since it was his first full year in 2nd grade and he welcomed any feedback/post-conferences)

44. The program called for the remaining two evaluations to be performed by someone from the PAR program. Mr. Brown was told that Ms. Allen would not do anymore evaluations. However, this was not true. Ms. Allen did evaluate the Mr. Brown again.

45. The PAR teacher, Ms. Kecia Helminski *only met with the Plaintiff one time* to give simply discuss the Plaintiff's successes and failures, no teaching strategies were ever given. Afterwards she never met again. She came maybe five times for 8 to 9 minutes then would leave, she would just leave a pink sheet which stated some of the things she saw and observed in the Plaintiff's classroom.

46.   The PAR teacher eventually stopped coming altogether around April.  On her last visit April 9, 2013 she stated on the pink form "see you Thursday @ 8 on you planning" but she never came The other teachers at Charjean who participated in the program Ms. Elder's and Ms. Monroe started asking where she was and the Plaintiff stated he did not know.

47.   In the hallway Ms. Elder's stated she was going to call the PAR teacher. Ms. Monroe suggested she not this because the PAR teacher does not help her at all.

48.   The Plaintiff decided to go searching for the PAR teacher and went to her office around the beginning of May 2013.  The Plaintiff asked for his copy of the video lesson the Plaintiff had video recorded and gave to her so she could give feedback, which she never did.

49.   The video was a copy of a lesson the Plaintiff had previous taught. The PAR teacher stated she lost the usb drive with the lesson on it.  The Plaintiff asked the PAR teacher why she had not been coming and she state that she was afraid of Principal Ms. Allen. She stated that she heard Ms. Allen had "went off" on another lady who was coming there.  The Plaintiff said goodbye and never saw her again.

50.   Mr. Brown found out later that the PAR teacher had recommended him for dismissal in a letter sent to labor relations, but the Plaintiff was unaware of this until he briefly read it at his hearing at the Board of Education on June 11, 2013. The Plaintiff could not prior to his hearing properly respond in writing to the letter because he was never given a copy.

51. The PAR program did not fulfill her obligations as stated. They enticed the Plaintiff to participate in the program by stating the principal would not do the remaining two evaluations that that they would do them. That was not true. The principal did the remaining two evaluations. The PAR program did not do two formal evaluations as they promised.

**52. However, at the end of the school year, Mr. Brown still received a Teacher Effectiveness Measure (TEM) Score of a "3" which means the teacher is "meeting expectations" This is the culminative score that ultimately counts not just the evaluations.** *( See Attached TEM Scores)*

53. The Plaintiff also had received a TEM score of a "3" the previous year at the end of the year when the scores are distributed from the state. *(See Attached TEM Scores))*

54. On May 10, 2013, the Plaintiff was called into the Principal's office at Charjean Elementary school and was told that he will be recommended for "non-reelect" meaning termination for 2013-2014 school year. The cause being "Inefficiency" and "Neglect of Duty", two of five areas whereby a tenured teacher can be considered for Dismissal by state law *(See attached letters)*

**55. On May 23rd, around five minutes before the Plaintiff was to start summer vacation and one day after the students had been dismissed, the Plaintiff was called into Principal Allen's office and handed four letters unfolded on cardboard stock paper**. The letters were letters of reprimands which the Plaintiff **had never received**.

They Fraudulently had **various dates** on them to appear that they were given on these dates. *(See copies of letters)*

56.  The letters of reprimands in support of the Plaintiff's dismissal were dated for, two letters were dated for May 1, 2013, one for March 25, 2013, and one for April 25, 2013. But were only given on May 23, 2013 . The contents of the letters were untrue and the Plaintiff immediately appealed to his Union representative

57.  In the letter dated May 1, 2013 it was stated by Ms. Allen that the Plaintiff was to go to another teacher's room and observe her reading block.  Principal Tomeka Allen stated that The Plaintiff did not go to Brandi Murrell's room to observe a lesson and this is considered (sic) "neglect of duty, negligent and inefficient"  *(See Attached letters)*

58.  However the letter is false.  **The Plaintiff did go to Brandi Murrell's room** to observe a lesson and took away two things he could use.  Ms. Murrell can verify this. The Principal was not being truthful she never offered to get the Plaintiff a substitute so he could stay for the day, **the Plaintiff went several times during his planning periods to observe Ms. Murrell's lessons.**

59.  The second letter for May 1, stated that the Plaintiff did not follow suggestions given in a post-conference including, calling parents to recognize success, and implementing student of the week, and using cues to remind students etc.

60.  However, the **Plaintiff did do these things, and some of the students and parents can affirm this. Plus after the Plaintiff complained in January,  Ms. Allen never**

**gave the Plaintiff any informal observations**, Only came twice more to do formal evaluations

61. The third letter dated for April 15, 2013 is almost identical to the one on May 1, 2013. and the letter ends by stating that "informal observations" show that you have not implemented the strategies to improve.

62. This is not true, as stated the Plaintiff did implement the strategies, and Mr. Brown's students will affirm this.

63. The last letter dated for March 25, 2013 states that Ms. Allen and her mentor met with the Plaintiff on October 10, 2012 for 1 hour and 7 minutes. This is not true the Plaintiff has never met with anyone for that long, The Plaintiff met for maybe ten or fifteen minutes at the most. Mr. Boone can affirm this. He had other teachers to meet with.

64. The letter further states that the Plaintiff is being reprimanded for only using "choral reading" "throughout the entire reading block." This is not true, even the Principal's own notes in the TEM evaluation system show that Plaintiff does not uses choral reading during the entire reading block. *(See Attached Observer's Notes from Evaluations)*

65. Moreover, Ms. Allen's conduct is **pretextual** because if the March 25, 2013 letters is true then that means that a trained administrator waited over 5 months from October 10, 2012 just to notice and give notice that the Plaintiff was not implementing her suggestions

66. Each of the letters are untrue and nothing but a malignant libel and are pretextual fabrications, and retaliation to terminate the Plaintiff for filing grievances and complaining to her supervisor previously.

67. The Plaintiff also notes that Ms. Allen stated in a letter given to labor relations that the Plaintiff was not using the "whiteboard protocol" meaning a certain way that teachers write their name, date and objectives on the board. However, Ms. Allen had given out two different sheets showing the white board protocol and the Plaintiff invited "Ms. Murrell" to check and see if it was correct and she stated that the Plaintiff's was the correct way.

68. Plus, the Plaintiff never had any problems with the way he writes his "name, date" and objectives" on the board until after he filed his grievance. Almost every teacher had a different way of using the "white board" protocol and they were not given a reprimand.

69. The Plaintiff also notes that in final reprimand letter that the Plaintiff is aware of, Ms. Allen stated that he did not get all 57 professional development hours in by February 15, 2013. **However, there was not a mandate to do this. It was <u>only optional</u>** meaning if you did do it, then you wouldn't have to report to work on the last day before summer vacation.

70. Ms. Wherry the assistant to the principal announced such at the faculty meeting. Yet the Plaintiff was falsely accused of insubordination in this matter.

71. Moreover, with the professional development hours you have to watch a video of instructional tips almost an hour to in order to past the test to get your hours.

72.   There is not enough time to watch all the videos during the instructional day so they must be watched at home on the teacher's own time.  This is in addition to grading 25 papers and tests weekly in science, social studies, math, grammar, reading, and composition at home or after-hours.

73.   These foregoing letters supporting dismissal are the only ones that Mr. Brown is aware of, However, The Plaintiff has not seen his file and the office of labor relations only let the Plaintiff briefly look at his file in the hearing.  The Plaintiff does not believe any other letters exist.

74.   Mr. Brown had a meeting/hearing on June 10, 2013 with the office of labor relations to discuss the principal's recommendation for termination. While at the meeting the Plaintiff was notified that the PAR teacher had also recommended the Plaintiff for non-rehire for the next year.

75.   As stated, the Plaintiff was previously unaware that the PAR teacher had recommended such a drastic recommendation of termination in light of her never meeting with the Plaintiff to offer any suggestions.

76.   The Plaintiff was allowed to view some of the contents of the letter from the PAR teacher and *__immediately knew__* that the Principal Tomeka Allen had authored some of the contents of the letter recommending termination, if not all of it.

77.   The PAR teachers are suppose to give an unbiased opinion without anyone else's input.  The letter from the PAR teacher stated she had been to the Plaintiff's classroom around ten hours (10.5) **which is not true,**  she came the entire time with every meeting

included maybe estimated 1 hour and 20 minutes or less it stated along the lines that the Plaintiff had been to four different schools.  This is something only the principal would have known, moreover, there is no policy against moving to a new school every year.

78.  The Plaintiff asked for a copy of the letter and was rebuffed, and told to contact the PAR teacher to get a copy, the Plaintiff did this, However, labor relations contacted the PAR teacher and told her not to respond to my request *(See Attached Email)*

79.  The Plaintiff was notified by the office of Labor Relations for Memphis City Schools on June 11, 2013 that he will be suspended without pay effective July 29, 2013, and will be recommended for termination.

80.  Teachers who were suspended last year, some have just received a hearing over a year later, and according to the Union's attorneys they cannot teach in another district in Tennessee,  nor does the school district pay them. Some quit out of frustration, it is taking two years to get a final dismissal hearing from the board, and they still have not had a hearing and teachers are being denied their rights under T.C.A. 49-5-512

81.  The Plaintiff is suspended **without pay or health insurance,  based** on the false information submitted by Tomeka Allen and the PAR teacher, and it can be up to two years or more before the Plaintiff has a final termination hearing before the board of education. **The Plaintiff has never received a notice of  COBRA rights.**

82.   Such reports made  against the Plaintiff in support of dismissal  were wholly untrue, were malicious, and were a fabrication by defendants devised with an intent to injure the Plaintiff

83. The actions of the district were pretextual meaning that the proffered reason for the Plaintiff's suspension had no basis in fact, and the reasons given did not actually motivate the district's action, but rather it was malice for the Plaintiff.

84. These deficiencies in these areas pointed out by Ms. Allen **were never** brought to the Plaintiff's attention so there was no notice and opportunity to cure. Morever, that the reasons stated by the district was insufficient to warrant suspension without pay to a tenured teacher, who has never been in trouble, alternative disciplinary methods could have been used.

85. Ms. Allen never referred the Plaintiff to the office for labor relations for discipline, which is usual **required** for employees that are insubordinate or misbehaving.

86. The Conduct of the District and its agents conduct was motivated by malice and a reckless disregard for Mr. Brown's rights under the Constitution and the law.

87. The Plaintiff was injured by these actions and suffered a suspension from his employment and a recommendation for his termination and also suffered emotional distress including insomnia, headaches, depression, stress, worry, lost of appetite otherwise the Plaintiff had been injured and has suffered damages, general and special, including financial loss and damage/ defamation to his teaching and professional reputation in the state and district.

**COUNT ONE**
**( Mr. Brown's Title VII Retaliation Claim against the District)**

*All other allegations of this complaint are incorporated herein by reference.*

88.   The District is an employer subject to Title VII, under which retaliation against persons who have exercised protected rights is prohibited.

89.   In complaining about illegal behavior on the District/ Ms. Allen, Mr. Brown engaged in protected activity under Title VII..  Mr. Brown advocated on behalf of the students, at Charjean who had been the victim of such illegal activity.

90.  Mr. Brown suffered adverse employment actions by agents and employees of the District for the exercise of protected rights, i.e., the District through its agents and employees, caused his contract to be nonrenewed on untrue charges,  harassed him, and retaliated against him

91. The district brought unsubstantiated charges against him to leverage his dismissal,, imposed heightened levels of scrutiny not given to other teachers in their evaluation, defamed him,  gave him a low evaluation which affects his TEM score,  and ultimately recommended him for dismissal and interfered with his  liberty and property interests.

92.   A motivating factor in District's retaliation was that he reported abuse  of children and of an employee and illegal activities, a protected activity under Title VII. The District's actions were in retaliation for his exercise of protected rights.

93. The Plaintiff also complained informed Charjean building engineer that the windows in the entire school were/are "screwed shut."  and such is a safety hazard who relays concerns to the principal.

94.  The District has no legitimate non-discriminatory reason for treating Mr. Brown as it did. Retaliation for exercise of protected rights is a form of invidious discrimination prohibited by law.  By virtue of the foregoing, the District violated the prohibition against retaliation as set forth in Title VII of the 1964 Civil Rights Act.

## COUNT TWO
**(Mr. Brown's Common Law Whistle-blower Claim Against the District)**

*All other allegations in this complaint are incorporated herein by reference.*

95.  Mr. Brown gave notice to the District and its senior administrative personnel of Corporal Punishment   of   students  at Charjean.  Including abuse of the Principal's secretary by the Principal.

96.  The District did not properly act on Mr. Brown's  information.  The District responded by retaliating against Mr. Brown, and eventually adopting charges with the intent to terminate Mr. Brown's employment.

97.  The actions of the District and its senior administrative personnel in doing so constituted impermissible reprisal Mr. Brown has been harmed as a result. Mr. Brown seeks all remedies to which he is entitled for this common claim.

## COUNT THREE
**( Mr. Brown's 42 U.S.C. §1983 (Property Interests) Against the District)**

*All other allegations in this complaint are incorporated herein by reference.*

98.  Mr. Brown had property interests in his contract as a tenured teacher which are protected under the due process clauses of the United States Constitution.

99.  Acting under color of state law, the District and its agents deprived Mr. Brown of property interests in his contract without due process of law and based on false allegations.  Mr. Brown was injured as a result of the Defendant's acts. The District and its agents are liable for those injuries.

## COUNT FOUR
## ( Mr. Brown's 42 U.S.C. §1983 (Liberty Interests) Against District)

*All other allegations in this complaint are incorporated herein by reference.*

100. Defendant's actions occurred under color of state law and violated 42 U.S.C. § 1983 and the due process clause of the 14th amendment of the Constitution of the United States. Mr. Brown's constitutional right to equal protection of the law was violated.

101. Defendants acting alone or in collusion with each other, denied Mr. Brown equal treatment and protection of the law in his employment. Their conduct damages his reputation in the educational community and interfered with his ability to engage in his profession and pursue other business/employment interests.

102. Their conduct was motivated by malice or a reckless disregard for Mr. Brown's rights under the Constitution and the law. Pretextual charges of unprofessional conduct and adoption of charges seeking termination of his employment for false reasons harmed Mr. Brown's professional name and reputation. Mr. Brown is entitled to a name-clearing hearing  trial by jury and an award of damages.

## COUNT FIVE
## (Mr. Brown's Gender  Discrimination against the District)

*All other allegations of this complaint are incorporated herein by reference.*

103. In complaining about gender discrimination behavior and bullying and harassment by Ms. Allen , Plaintiff a member of a protected class engaged in protected activities under the Title VII of the 1964 Civil Rights Act.

104. The District subjected Mr. Brown to adverse employment actions, that had a both disparate treatment and impact. Tomeka Allen made several references to the Plaintiff's gender along the lines of "You a Man" your students suppose to be "scared of you". "You a Man too" you suppose to have then "in line" etc.

105. In fact two other men Mr. Green a senior, the building engineer stated to the Plaintiff she makes accusations then throw her hand up and yells "no" when you try to explain your position. your position. Mr. Hardy stated similar things of her yelling.

106. Also, the Plaintiff was discriminated against (disparate treatment) in that Ms. Allen stated the policy is that "**all men** must perform after school-duty outside" while the women were to stay inside. The plaintiff has been subject more than to the elements of rain, heat and cold while the women teachers did not have to be out monitoring. In sum women teachers were allowed to forego duties that their male counterparts had to follow.

107. Also, the Plaintiff and Mr. Sneed the other male second grade teacher was given a disproportionate amount of students with discipline problems, while the woman teacher who could not speak Spanish was given a class almost predominately full Hispanic students with few blacks, who for that area as a whole were less inclined to misbehave in class, in line, cafeteria and have far less discipline problems, and than some of their black counterparts. This had a disparate impact on the 2nd grade men.

108. The Plaintiff alleges this was done because he "Was a Man." and "could handle them". The school even "transferred" a boy on suffering from ADHD according to his mom and on medication, from the woman teacher's room to the Plaintiff's .

## COUNT SIX
### (Mr. Brown's Defamation-Libel against the District)

*All other allegations in this complaint are incorporated herein by reference.*

109. Tomeka Allen's statements in the letters given May 23, 2013 but had various dates were false and constitute defamation per se.. The PAR teacher Ms. Kecia Helminski defamed the Plaintiff by stating amongst other things that she observed the Plaintiff for 10.5 hours when she knew that she had not, and never gave any strategies to the Plaintiff.

110. She recommended the Plaintiff for termination when she knew that she had not had but one post-conference with her supervisor, and never gave any feedback on anything the Plaintiff was doing wrong, when she was there to assist first, then evaluate later.

111. Mr. Brown was damaged by this and Tomeka Allen's statements, including the allegations she made in some of the Plaintiff's evaluations where she stated the students were acting out and the lesson was below standards when the video does not show this.

## COUNT SEVEN (Mr. Brown's Aiding and Abetting Tort of Another against District)

*All other allegations in this complaint are incorporated herein by reference.*

112. At relevant times, the Defendants committed torts (retaliation common law whistle-blowing and defamation) that injured Mr. Brown.. Each of them Tomeka Allen

and the PAR teacher knew that each of them was engaged in tortious conduct when the PAR teacher collaborated and forged letter/s for dismissal.

113. Each of them substantially assisted each other or encouraged each other in accomplishing tortious conduct. Each of them aided and abetted each other's tortious conduct proximately causing damage to Mr. Brown.

**COUNT EIGHT Civil Conspiracy against District**

*All other allegations of this complaint are incorporated herein by reference.*

114. The PAR teacher and Ms. Allen engaged in a common design to have the Plaintiff terminated from his employment.  It was accomplished by an unlawful purpose of forging documents.  They submitted these letters to labor relations and as a result the Plaintiff's suffered a suspension without pay.

**COUNT NINE**

**Violations of COBRA  Notice Penalty Claims** *Consolidated Omnibus Budget Reconciliation Act,*

*All other allegations of this complaint are incorporated herein by reference*

115.  The district has failed to provide the Plaintiff with a notice of COBRA rights regarding health insurance. The Plaintiff's reason for suspension **was not  for"gross misconduct"** In fact to the plaintiff's knowledge the district acts in bad faith and has not sent COBRA notification to to **any** "nonrelected teachers"  from last year and this year. The district  has terminated the Plaintiff's health insurance effective July 29, 2013, according to the Union attorneys.  The qualifying event occurred July 29, 2013.

**COUNT TEN**
**(Negligent Supervision against District)**

*All other allegations of this complaint are incorporated herein by reference.*

116.  A duty of care was owed to the Plaintiff to make sure the PAR teacher was performing her duty and regularly doing post-conferences to assist the Plaintiff and give feedback, the PAR teacher neglected that duty and did not conduct any post-conferences except one time with the Plaintiff and no advice was given.

117.  Also the PAR teacher fraudulently recommended the Plaintiff for termination when she had not performed any of her duties which were to assist the Plaintiff, as a result of such the Plaintiff had been damaged by their negligent conduct.

118.  A duty of care was owed to make sure that Tomeka Allen a first year principal anywhere, knew properly how to evaluate teachers.  Ms. Allen did not.  Some teachers were given high scores when they did not follow the rubric and others were given low scores including the Plaintiff when they did follow the rubric for evaluation.

**COUNT ELEVEN**
**(Negligent Training against District)**

*All other allegations of this complaint are incorporated herein by reference.*

119.  A duty of care was owed to the Plaintiff to make sure the PAR teacher and principal Tomeka Allen was adequately trained to evaluate teachers was performing her duty and regularly doing post-conferences to assist the Plaintiff, the PAR teacher and Ms. Tomeka

Allen were not adequately trained to do observations whereby teachers livelihood depends on such. More training was needed to recommend a teacher for firing.

120. The PAR teacher was hired around January and put out in the field maybe two or three weeks later. Tomeka Allen just looked at the teacher's evaluation scores from last year as a pattern, without any close evaluation. According to Ms. Murrell she was not even evaluated in his first lesson but received high scores. As a result of the inadequate training given to Tomeka Allen and the PAR teacher Ms. Helminski the Plaintiff has been damaged and suffered loss

## COUNT TWELVE (Breach of Contract) Common law twelve

*All other allegations of this complaint are incorporated herein by reference.*

121. The Plaintiff had a contract with the district that his continued employment be based on satisfactory job performance etc. The Plaintiff had been teaching continuously for ten years and did nothing to breach his contract, but rather he earned a overall TEM score of a "3" for two years straight which is meeting expectations.

122. The District's actions were pretextual and it maliciously breached the Plaintiff's contract based on fraudulent letters submitted by Tomeka Allen and Ms. Helminski, claiming the Plaintiff was not following certain suggestions when in fact he was.

123. This breach was a proximate result of the District's conduct and the Plaintiff has been injured and suffered a suspension without pay and recommendation for termination,

and he Plaintiff has suffered emotional distress damages, otherwise the Plaintiff has been injured.

## COUNT THIRTEEN (Fraud)

*All other allegations of this complaint are incorporated herein by reference.*

124. Ms. Allen gave the Plaintiff four forged letters on May 23rd, a day after the students had left for summer vacation, each letter had different dates two letters were from May 1, 2013, March 25, 2013, and April 25, 2013.  But were only given on May 23, 2013. The contents of the letters were untrue, and Tomeka Allen tried to dress the letters as though she had given the letters to the Plaintiff on the dates stated..

125. Ms. Helminski the PAR teacher also fraudulently stated in her letter for the Plaintiff's dismissal that she had come to the Plaintiff's room for 10.5 hours which is untrue.  The Par teacher only came to observe after her initial observation with her supervisor very short periods of time, maybe around ten minutes or less at most each time.

126. She never gave the Plaintiff any feedback except for once which was room arrangement, she fraudulently claimed she gave the Plaintiff advice on his teaching strategies and the Plaintiff did not follow such advice.  The Plaintiff was injured by these actions and suffered a suspension from his employment without pay and a recommendation for his termination and also suffered emotional distress including insomnia, headaches, depression, lost of appetite otherwise the Plaintiff had been injured and has suffered damages, including general and special.

## COUNT FOURTEEN

### Implied Covenant of Good Faith and Fair Dealings

*All other allegations of this complaint are incorporated herein by reference.*

127. The Plaintiff joined Memphis City Schools with the understanding that this would be his career and a place to retire. The Plaintiff is a tenured teacher and his contract was guaranteed on the basis of satisfactory performance. The Plaintiff has been consistently meeting expectations. The district has dozens of vacancies in the hard to fill area of special education and ESL.

128. The Plaintiff became licensed in April 2013 in special education and was not given an opportunity to practice in this area. The Plaintiff's employment was terminated on false allegations and false letters and such was pretextual and done to the Plaintiff with malice, and the Plaintiff has suffered damages from said conduct, including general and special.

## COUNT FIFTEEN

### (Violations of Teacher Tenure Laws, T.C.C. 49-5-512 Against the District)

*All other allegations of this complaint are incorporated herein by reference.*

129. Memphis City Schools has fail to give tenured teachers a timely hearing before the Board of Education for final dismissal of teachers who were non-re-elected last year in accordance with T.C.A. § 49-5-512 who had low TEM scores.

130.    Although the provision does not state a time for the Board of Education to take action. Its clear that the lawmakers did not intend for the process to take two years or

longer.  Some teachers have given up the fight and took other jobs as a result tenured

teachers are not given timely due process.    .

131.   The teachers are still suspended without pay as the Plaintiff is.  The District does

this deliberately and maliciously in direct violation of teachers rights.  The Plaintiff

probably  will not get a final hearing before the board of education for around two years

and this is unfair and a violation of  Tennessee's tenure laws. The Plaintiff is being given

charges on bogus allegations. *(See Attached  Premature Letter to Superintendent))*

## COUNT SIXTEEN

### ( Retaliation, Violations of Tennessee Public Protection Act (T. C. A. § 50-1-304 Against the District)

*All other allegations of this complaint are incorporated herein by reference.*

132.  Mr. Brown reported illegal activities involving the public school children, refused

to be silent concerning that corporal punishment was still being used and the secretary

was assaulted. The Plaintiff also notified proper school personnel Charjean  and that the

windows in the school were screwed shut, and spoke out against this to the building

engineer, who stated Ms. Allen wants them shut.

133.  Mr. Brown also asked for a transfer, and or someone else to evaluate him.  Tomeka

Allen called the Plaintiff into her office the next day and started yelling at the Plaintiff,

the Plaintiff received a low evaluation the following day, and ultimately was

recommended for termination based on forged letters and is currently suspended without

pay as a result of engaging in this protected activity involving public schoolchildren.

### (Plaintiff's Challenge to the TEM  Teacher Evaluation System)

134.  Memphis City Schools implemented a new evaluation system during the 2011-12 school year as part of statewide teacher reform,  the Whitehouse, Race-To-The Top grants and a grant from Bill and Melinda Gates.

135. Under this model teachers are evaluated in eleven different domains,  Tenured Teachers are given two announced and two unannounced/suprise evaluations. What is unfair is that the unannounced evaluations can be done at anytime and the teacher must effectively teach a lessonhit all **11 domains in just around fifteen or twenty minutes** when the observer comes into the room, they are scored on a 1-5.

136.  This is unfair in that teachers especially in the elementary do a lot of different things during the day such as educational and patriotic songs,  art, movement, class meetings, art, quiet reading, partner reading, educational reading games in groups, testing of individual students,

137.  So for an observer to come in anytime and not see the TEM components being implemented then give the teacher a low evaluation is unfair to the teacher.  Moreover, A lot of teachers *don't hit all the components but teach good lessons  are given good evaluations, and some who do hit most of  components  are given bad evaluations, just depending on the observer.  It is a biased based component.*

138.  Ms. Murrell stated to the Plaintiff  that she did not teach a lesson on her first evaluation and she got fours and fives on her observation which is excellent. She stated when she got ready to teach Ms. Allen left the room.  Hence, the Plaintiff makes a challenge to the current TEM evaluation system.

**WHEREFORE,** the Plaintiff prays for injunctive relief and judgment for compensatory and punitive damages against the District and individual Defendants and seeks:  Under each count the Plaintiff demands eight million dollars in damages. Compensatory damages of eight million dollars an amount to be proven at  a jury trial; Make-whole remedies; Consequential damages in an amount to be proven at trial or eight million; Punitive damages against the individual Defendants of two million dollars; Appropriate injunctive relief;  An award of costs and expenses and attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. §1988;  Pre- and post-judgment interest at the highest rate permitted by law, on all amounts awarded from the date of judgment until paid in full; and; Such other relief as the Court may deem just and proper.

Dated this 31 day of July 2013,

*Although the Plaintiff plead 8 million dollars on each count out of an abundance of caution, this should be viewed as only 8 million dollar suit.*

Kim Brown
6430 Freelark ln.
Memphis, Tn. 38115