IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

KIM BROWN,                          )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )          No. 13-2586-SHM-dkv
                                    )
BOARD OF EDUCATION OF THE           )
SHELBY COUNTY SCHOOLS,              )
                                    )
          Defendant.                )

---

REPORT AND RECOMMENDATION ON THE DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND ON PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

---

On July 31, 2013, Kim Brown ("Brown") filed a 30-page *pro se* employment discrimination complaint against the defendant, the Shelby County Schools Board of Education ("SCBOE"), alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as various state law claims.[1] (Compl., ECF No. 1.) The complaint sets forth sixteen counts and seeks injunctive relief, compensatory damages, punitive damages, and attorney's fees. (*Id.*) The case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

---

[1]     Attached to the complaint are 24 pages of exhibits.

Now before the court is the March 24, 2014 motion for summary judgment filed by the SCBOE, seeking judgment as a matter of law on all counts. (Def.'s Mot. for Summ. J., ECF No. 12.)   On April 28, 2014, Brown filed a response in opposition and a cross-motion for summary judgment on his Consolidated Omnibus Budget Reconciliation Act ("COBRA") claim.   (Pl.'s Resp. in Opp'n to Def.'s Mot for Summ. J., ECF No. 43.)   The SCBOE replied on May 8, 2014 and opposed Brown's cross-motion for summary judgment. (Def.'s Reply, ECF No. 48.)   For the reasons set forth below, it is recommended that the SCBOE's motion for summary judgment be granted in part and denied in part and that Brown's cross-motion for summary judgment be denied.

## I.   PROPOSED FINDINGS OF FACT

### A.   Standard for Establishing Facts as Disputed or Undisputed Under Rule 56

Under Rule 56(c)(1) of the Federal Rules of Civil Procedure, which governs motions for summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that

> an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Rule 56.1 of the Local Rules further explains that each party, whether the moving party or the non-moving party, must support their assertions of fact by specific citation to the record. Local Rule 56.1(a), (b). When the non-movant disputes a fact offered by the movant in its statement of material facts, the non-movant must likewise support each disputed fact by specific citation to the record. Local Rule 56.1(b). Additionally,

> the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

*Id.*

Affidavits or declarations submitted as exhibits in support of a motion for summary judgment or a response in opposition to a motion for summary judgment have specific requirements under Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c)(4) provides that such materials "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." These requirements are mandatory.

Charles Alan Wright et al., 10B Federal Practice and Procedure §
2738 (3d ed. 1998).

Brown disputes a number of the SCBOE's material facts and
also sets forth forty-two additional material facts. (*See* Pl.'s
Resp. to Def.'s Statement of Undisputed Facts, ECF No. 40; Pl.'s
Additional Statement of Undisputed Facts, ECF No. 41.) In some
instances, Brown properly supports his dispute of facts and
statement of additional material facts with specific citation to
the record. In other instances, Brown merely cites to his own
sworn declaration generally, attached as Exhibit 1 to his
response in opposition to the SCBOE's motion for summary
judgment. (*See* Pl.'s Resp. to Def.'s Statement of Undisputed
Facts, ECF No. 40; Pl.'s Additional Statement of Undisputed
Facts, ECF No. 41; *see also* Brown Decl., ECF No. 43-1.)
Brown's fifty-three paragraph declaration to which he refers
contains some testimony that is based on personal knowledge and
would be admissible in evidence and some testimony that does not
satisfy the requirements of Rule 56(c)(4).

*Pro se* litigants are not exempt from the requirements of
the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d
591, 594 (6th Cir. 1989), nor is the court required to ferret
out evidence in the record to support Brown's disputed facts or
additional material facts, *see Young Bok Song v. Gipson*, 423 F.
App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively

4

require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.").

Therefore, to the extent Brown supports his assertions by specific citation to the record, the court will consider the fact genuinely disputed. Likewise, to the extent that Brown's declaration sets forth facts based on personal knowledge and that would be admissible in evidence in compliance with Rule 56, the court will consider the declaration as proper support.

B. Undisputed Facts Underlying Brown's Action

The following facts are undisputed for purposes of this summary judgment motion:

The SCBOE hired Brown in October of 2001 as a substitute teacher. (Def.'s Statement of Undisputed Material Facts ¶ 1, ECF No. 12-1.) In August of 2002, Brown became a full-time employee of the SCBOE, and since that time, he has worked at ten different schools during his career. (*Id.* ¶ 2.) He has been transferred both voluntarily and administratively during his employment with the SCBOE. Brown claims that the reason he changed locations so frequently is that he wanted to see the inner-workings of many schools in the school district, he enjoyed teaching at a different school every year, and he was thinking of writing a book. (*Id.* ¶ 3.)

Brown was suspended and ultimately terminated from employment as a teacher with the SCBOE after the 2012-2013 school year. (*Id.* ¶ 15.) His last year of teaching prior to his suspension and termination was spent at Charjean Elementary School for the 2012-2013 academic year, where Tameka Allen ("Allen") acted as the principal for that year and remains in that position to date. (*Id.* ¶¶ 4-5.) Brown's 2011-2012 school year was spent at Treadwell Elementary School, where he was supervised by Kenia Coleman ("Coleman"). (*Id.* ¶ 6.)

Teacher Effectiveness Measure ("TEM") scores are used to evaluate the performance level of teachers and range from a score of 1 to 5. At the time of the 2012-2013 school year, the TEM program was in its second year. (Pl.'s Additional Statement of Undisputed Facts ¶ 36; ECF No. 41.) On the TEM scale, a score of 3 out of 5 indicates a teacher meets expectations; any score below a 3 is considered to be below or significantly below expectations. (*See* TEM Score, ECF No. 43-4; Branch Aff., ECF No. 12-4.) While at Treadwell Elementary, Brown received an overall Teacher Effectiveness Measure ("TEM") score of 2 out of 5 for the entire year.[2] (Def.'s Statement of Undisputed Material Facts ¶ 7, ECF No. 12-1.)

---

[2] Brown disputes this fact on the grounds that before his students' TCAP scores were factored into his score, which occurred during the summer, Brown had received a rating of 3 out of 5 for the 2011-2012 year. (*See* Pl.'s Resp. to Def.'s

During the 2012-2013 school year, Brown was scheduled to receive another TEM review at Charjean Elementary School. (*Id.* ¶ 8.) In the middle of the evaluation cycle, Brown chose to enter the Peer Assistance Review ("PAR") program and was assigned a consulting teacher, Kecia Helminski ("Helminski"), who attempted to help Brown improve as a teacher and boost his evaluation scores during the second half of the year. (*Id.* ¶ 9.) Helminski believed that Brown failed to implement her suggestions and noted that he often forgot prior conversations they had about classroom strategies, (Helminski Aff. ¶¶ 4-5, ECF No. 12-6); however, Brown believed that he adopted all of Helminski's suggestions, (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶¶ 10-11, ECF No. 40). At the end of the school year, Brown received a TEM score of 1.[3] (*Id.* ¶ 12.)

---

Statement of Undisputed Facts ¶ 7, ECF No. 40; Brown Decl. ¶¶ 5-6, ECF No. 43-1.) He further states that he had been teaching fourth grade at Treadwell Elementary for the 2011-2012 year, and he was not notified that his TEM score dropped due to TCAP results until September of the 2012-2013 school year when he was preparing for his first video recorded observation. (Brown Decl. ¶ 6, ECF No. 43-1.) The court finds that this objection does not create a genuine dispute of material fact. Even accepting as true that Brown originally received a score of 3 before the TCAP scores were taken into account during the summer and that Brown was not notified of his lower score of 2 until September, this does not call into question the fact that Brown received an overall and final evaluation score of 2 for the 2011-2012 year. Further, the SCBOE has offered evidence to show that Brown in fact received a 2. (*See* TEM Score, Ex. 1, ECF No. 12-4.)
[3] Brown disputes this fact, claiming that the SCBOE falsified his score and that he actually received a score of 3 out of 5.

As a part of the PAR program, a review panel formed to assess Brown's continued employment with the school system — i.e., his re-elect status. Upon review of Brown, the PAR review panel, along with the Charjean Elementary principal and Helminski, agreed that Brown should be recommended for non-re-election for the 2012-2013 school year; this meant Brown would be dismissed. (*Id.* ¶ 13.) Brown's non-re-elect status was upheld by the SCBOE Department of Labor Relations. (*Id.* ¶ 14.) On June 11, 2013, Brown was notified that he would be placed on suspension without pay effective July 29, 2013 and that tenure charges and a recommendation would be made to the SCBOE to dismiss him as a tenured teacher. He was also instructed to

(Pl.'s Resp. to Def.'s Statement of Undisputed Material Fact ¶ 12, ECF No. 40.) As support, Brown cites his own declaration in its entirety, with emphasis on paragraph 5. Paragraph 5 of Brown's declaration repeats Brown's claim that the SCBOE falsified his score and offers a long-winded explanation of how it "seems virtually impossible for me to get a TEM 1" because "on my four evaluations to my understanding I scored more 2's than 1's." (*Id.* ¶ 5.) Putting aside that Brown's dispute is stated in speculative terms, he attaches his TEM score sheets from the 2011-2012 school year and the 2012-2013 school year as proof. His 2012-2013 TEM score sheet is illegible, and the court cannot decipher what the sheet says. (*See* TEM Score, ECF No. 43-4.) The SCBOE likewise offers Brown's TEM score sheet for the 2012-2013, which indicates Brown received a 1 out of 5. (*See* TEM Score, Exs. 1-2, ECF No. 12-4.) Additionally, Chantay Branch, the Director Manager of the SCBOE Department of Labor Relations, swore in an affidavit that Brown received an overall evaluation score of 1 out of 5. (Branch Aff. ¶ 13, ECF No. 12-4.) Brown fails to offer any evidence to support his disputed fact that he in fact received a score of 3 or that the SCBOE falsified his score. He thus fails to comply with Rule 56 of the Federal Rules of Civil Procedure. The court will therefore treat the SCBOE's fact as undisputed.

contact the Division of Employee Benefits to inquire about insurance premiums. (*Id.* ¶ 15.)

On June 18, 2013, Brown filed a charge with the EEOC, which the SCBOE received on June 27, 2013. (*Id.* ¶ 16.) Brown thereafter requested a right-to-sue letter on July 12, 2013, and received said letter on July 23, 2013. (*Id.* ¶ 17.) Brown filed the instant lawsuit on July 31, 2013. (*Id.* ¶ 18.) The SCBOE answered on August 21, 2013. (*Id.* ¶ 20.)

In October of 2013, a charge of inefficiency was brought against Brown under the Tennessee Teacher Tenure Act based on Brown's low evaluation scores. The SCBOE found the charge warranted Brown's dismissal as a tenured teacher.[4] (*Id.* ¶ 19.) An administrative hearing was held on the charge of inefficiency on January 29 and 30 of 2014, in which Brown was offered an explanation of the SCBOE's evidence and an opportunity to be heard before a hearing officer. The charge of inefficiency was based on Brown's low TEM scores from the 2011-2012 and 2012-2013 school years.[5] (*Id.* ¶¶ 21-22.) At the hearing, Brown was

---

[4] Though Brown does not dispute this fact, he states that he could have been put on probation by the Board under state law, rather than terminated. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 19, ECF No. 40; Pl.'s Additional Statement of Undisputed Facts ¶ 40, ECF No. 41.) The court finds this fact irrelevant for purposes of this motion for summary judgment.

[5] Brown does not dispute this fact but adds that the "hearing officer hears probably about five or six teaching tenure hearings a month, her law firm has a financial interest and she

represented by counsel and presented evidence to the hearing officer, examined the evidence brought against him, called witnesses on his own behalf, and had the opportunity to cross-examine adverse witnesses. (*Id.* ¶ 23.)

Pursuant to the court's scheduling order entered in the present cause of action, all discovery was to be completed by February 25, 2014. (*Id.* ¶ 24.) After the discovery deadline passed, the hearing officer issued her opinion on March 10, 2014, and her findings of fact and conclusions of law on March 13, 2014.[6] (*Id.* ¶ 25.) The hearing officer upheld the charge of inefficiency pursuant to Tenn. Code Ann. § 49-5-501, finding there was substantial evidence in the record to support the charge. (*Id.* ¶ 26.) Further, the hearing officer found that the SCBOE satisfied its burden to prove that there was just cause to terminate and formally dismiss Brown, effective March

---

is not impartial. Furthermore, the Plaintiff has a constitutional right to have his case heard anew in federal court and the hearing officer's opinion should have no bearing on the instant action." (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 21, ECF No. 40.) Brown repeats this statement in several other responses. (*See id.* ¶¶ 25-27.) The court notes that it is not bound by the hearing officer's decision and exercises *de novo* review of the present case.

[6] Brown does not dispute this fact but states that the SCBOE failed to identify the hearing officer's opinion in its discovery disclosures, due February 25, 2014. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 24, ECF No. 40.) However, the hearing officer's opinion was not issued until March 10, 2014, after the discovery deadline passed.

10, 2014. (*Id.* ¶ 27.) Thus, Brown's termination was final as of March 10, 2014.

Regarding the integrity of the process by which Brown was reviewed, statements made during the course of Brown's review by the SCBOE and tenure hearing in reference to his efficiency and evaluation scores were made only to employees of the SCBOE in determining whether to re-elect or dismiss Brown.[7] (*Id.* ¶ 30.) Further, it is the responsibility of the on-site supervisor — in this case, Allen — to report employees' performance issues to the SCBOE Department of Labor Relations, including recommendations for non-re-election of a teacher's contract. (*Id.* ¶ 31.) In turn, the SCBOE must investigate the circumstances surrounding the employee's referral to the department and must determine what if any actions should be taken to discipline or otherwise alter the teacher's employment status. (*Id.* ¶ 32.) The administrators who reviewed Brown's

---

[7] Brown opposes this, stating that people including a parent have discovered the SCBOE's allegations that Brown was inefficient and received low evaluation scores. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 30, ECF No. 40.) For this, he again cites to his own declaration. (*See* Brown Decl. ¶¶ 51-52, ECF No. 43-1.) Brown's declaration merely restates his belief that several parents, students, a friend, and Ms. Hemmingway have discovered he was terminated based on low evaluation scores and inefficiency. (*See id.*) He does not, however, offer any proof that the SCBOE spoke to a third party regarding Brown's performance issues or that they discussed these issues outside of his review and tenure hearing. Because he fails to offer evidence to show the fact is genuinely disputed, as required by Rule 56 of the Federal Rules of Civil Procedure, the court will treat the fact as undisputed.

performance, Allen and Helminski, have never been referred for discipline to the SCBOE or the Department of Labor Relations. (*Id.* ¶ 33.) Allen and Helminski did not benefit from or engage in any conduct with regard to their recommendations, observations, feedback, or evaluations of Brown for any personal purpose. (*Id.* ¶ 34.)

Brown, a male teacher, did not use the formal complaint procedure provided by the SCBOE to file a claim related to gender discrimination at Charjean Elementary School.[8] (*Id.* ¶ 28.) He brings a claim for gender discrimination in the present case. Brown asserts that the male teachers were forced to be on outside duty — which involved monitoring students outside in the elements — while the female teachers were not. (Pl.'s Additional Statement of Undisputed Facts ¶¶ 17-18, ECF No. 41; Brown Decl. ¶¶ 25-27, ECF No. 43-1.) He also complains of harassing behavior by the principal, Allen, who he alleges made frequent comments that because he is "'A Man' the students suppose [sic] to be scare [sic] of you. And that 'You a Man Too' you suppose [sic] to be more effective than the women in classroom management in general." (Compl. ¶ 15, ECF No. 1.) He alleges that men received less favorable classroom assignments, consisting of predominately black students, who he

---

[8] Brown disputes this fact, but the court finds that his contentions do not create a genuine issue of material fact. See discussion *infra* Part II.B.1 for the court's explanation.

claims misbehave more frequently; meanwhile, women were assigned the more favorable classrooms of predominately Hispanic students. (*Id.* ¶¶ 17-18.)

Finally, Brown alleges that he was not properly reviewed for a TEM score, either by Allen or by Helminski, because they did not visit his classroom for evaluations the required number of times, and their evaluations did not reflect his teaching ability. (*Id.* ¶¶ 38, 40, 44-46, 51.)

On the subject of Allen, Tony Grandberry, another male teacher, testified in a deposition that he never in his career had a principal yell at him like Allen did. (Pl.'s Additional Statement of Undisputed Facts ¶ 20, ECF No. 41.) One employee, Fachel Williams, stated in a declaration that she was physically assaulted by Allen. (*Id.* ¶ 3.) Various other female employees at Charjean Elementary — including Rhonda Hemingway, Jocelyn Ford, and Christal Tharp — similarly stated in declarations that Allen harassed them in various ways by yelling at them or making them cry. (*Id.* ¶¶ 5, 8, 9.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland Cnty. Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case. *LaPointe*, 8 F.3d at 378. This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247—48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251—52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378. Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

B.  Brown's Title VII Retaliation Claim

In Count One of his complaint entitled "Mr. Brown's Title VII Claim against the District," Brown alleges that he was wrongfully terminated based on retaliation. (Compl. ¶¶ 88-94, ECF No. 1.) To establish a *prima facie* case of retaliation, Brown must show:

15

> (1) he engaged in activity protected under Title VII;
> (2) the defendant knew that he engaged in the
> protected activity, (3) the defendant subsequently
> took an adverse, retaliatory action against the
> plaintiff, or the plaintiff was subjected to severe or
> pervasive retaliatory harassment by a supervisor, and
> (4) the protected activity and the adverse action were
> causally connected.

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006). If Brown succeeds in establishing a *prima facie* case, the burden then shifts to the SCBOE to articulate a legitimate, nondiscriminatory reason for the adverse action. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). If the SCBOE carries this burden, then Brown "must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.*

The SCBOE challenges the first and second prongs of Brown's *prima facie* case of retaliation, arguing that Brown never engaged in protected activity under Title VII prior to his termination and that Brown's eventual exercise of protected rights was not known to the SCBOE until after his suspension. (Def.'s Mem. in Supp. of Mot. for Summ. J. 3, ECF No. 12-2.) To engage in protected activity, an employee must have "opposed any practice made an unlawful employment practice" under Title VII or have "made a charge, testified, assisted, or participated . . . in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Brown makes arguments on both

forms of protected activity. First, he asserts that he filed a charge with the EEOC on June 18, 2013, and he was terminated from employment by the SCBOE thereafter. Second, Brown argues that he opposed unlawful discrimination at Charjean Elementary during the 2012-2013 school year.

1. *Brown's EEOC Charge*

The SCBOE argues that Brown did not file his EEOC charge until after his suspension, nor was his eventual exercise of protected rights known to the SCBOE until after his suspension. (Def.'s Mem. in Supp. of Mot. Summ. J. 3, ECF No. 12-2.)  It is undisputed that on June 11, 2013, Brown received notice of his suspension and that tenure charges and a recommendation of dismissal would be made to the SCBOE to dismiss him as a tenured teacher. One week later, on June 18, 2013, Brown filed a charge with the EEOC alleging discrimination based on sex and retaliation, which the SCBOE received on June 27, 2013. In October of 2013, the SCBOE found the charges warranted his termination from employment, and in March of 2014, Brown's termination became final after the hearing officer issued her opinion upholding his inefficiency charge.

While it is true that Brown's termination was upheld by the SCBOE after he filed his EEOC charge, the decision to recommend him for termination occurred before he filed an EEOC charge. Thus, based on these facts, Brown cannot satisfy the first,

second, and third prongs of his *prima facie* case of retaliation on the protected activity of filing an EEOC charge.

In any event, assuming *arguendo* that Brown makes out a *prima facie* case of retaliation, the SCBOE has offered a legitimate, nondiscriminatory reason for Brown's termination. The charge brought against Brown was based on inefficiency and Brown's low TEM scores from the 2011-2012 and 2012-2013 school years. These reasons were discussed and explained to Brown at the administrative tenure hearing on January 29 and 30 of 2014, along with supporting evidence and witnesses.[9] In the present motion for summary judgment, the SCBOE has come forth with evidence to support that its charges were based on Brown's low TEM scores. (*See* Branch Aff. ¶ 19, ECF No. 12-4; TEM Score, Exs. 1-2, ECF No. 12-4; Allen Aff. ¶¶ 7-8, ECF No. 12-5; Helminski Aff. ¶ 6, ECF No. 12-6.)

The burden then shifts back to Brown to show that the SCBOE's proffered reasons are mere pretext. There are three ways a plaintiff can prove pretext: (1) by showing the proffered reasons had no basis in fact, (2) by showing the proffered reasons did not actually motivate the employer's action, or (3) by showing that the proffered reasons were insufficient to

---

[9]    Brown had the opportunity to appeal the hearing officer's determination that there was substantial evidence in the record to support his termination based on the January 29 and 30 hearing.  He did not attend the appeals hearing on April 29, 2014.

motivate the employer's action. *Tingle v. Arbors at Hilliard*, 629 F.3d 523, 530 (6th Cir. 2012). Brown has offered no argument or evidence beyond his own speculation that satisfies this burden. He argues that his TEM scores were falsified but adduces no evidence to support this theory; however, his own declaration admits that his 2011-2012 test scores "dropped from a three to only a two because of test scores" — meaning his final score for the entire year was a 2. (*See* Brown Decl. ¶ 5, ECF No. 43-1.) The 2012-2013 TEM score sheet he offers as support for his claim that his scores were falsified is illegible. Though *pro se* plaintiffs are held to less stringent standards, the court will not make out Brown's argument for pretext where he offers none. Brown's retaliation claim based on his EEOC charge thus fails.

    2.  *Brown's Opposition Activity*

    Brown alleges several instances of opposition activity. First, he alleges that he complained to the district of illegal activity occurring at Charjean Elementary — specifically that children were being abused in the school and subjected to corporal punishment and that he was concerned that the windows in the school were screwed shut and presented a safety hazard. (Compl. ¶¶ 89, 92, 93.) He also points to a letter he wrote to the Memphis Education Association ("MEA") on October 8, 2013, in which he requests an administrative transfer to another school

19

and complains that he is harassed by Allen because he is a "surplused teacher." (*See* Req. for Admin. Transfer, ECF No. 43-8.) In that letter, Brown mentions that he "was told in a meeting with Ms. Allen that since I was 'a man' I shouldn't be having any discipline problems." (*Id.* at 1.) In that same letter, he refers to another incident in which Allen raised her voice and stated that Brown should be on outside duty helping with dismissal with the other men. (*Id.* at 2.) Finally, Brown claims that he complained of gender discrimination to Branch, the Director Manager of the SCBOE Department of Labor Relations, in a meeting with her on January 7, 2013. (Pl.'s Resp. in Opp'n to Def.'s Mot for Summ. J. 3, ECF No. 43.) For the reasons set forth below, Brown fails to make out a *prima face* of retaliation on each of these claims.

a. Complaints of Abuse and Safety Hazards

As to Brown's allegations that he informed the district of corporal punishment, abuse and safety hazards at Charjean Elementary School, these actions that Brown opposed are not practices made unlawful under Title VII. Title VII was enacted to eliminate discrimination in employment based on race, color, religion, sex, or national origin. Child abuse and violations of safety hazards do not fall within the purview of Title VII. Accordingly, Brown did not engage in protected activity within

the meaning of Title VII in reporting these abuses and fails to establish the first prong of a *prima facie* case of retaliation.

b.  Request for Administrative Transfer to the MEA

Brown argues that his October 8, 2013 request for an administrative transfer to the MEA qualifies as opposing a practice made unlawful under Title VII, specifically gender discrimination.  Although Brown's statements were made to the MEA rather than the SCBOE, complaining to anyone — whether management, unions, other employees, or newspaper — about practices made unlawful under Title VII can be considered protected activity according to the EEOC's Compliance Manual. *See Johnson*, 215 F.3d at 579 & n.8 (citing EEOC Compliance Manual, (CCH) ¶ 8006 and noting that the EEOC's interpretation of Title VII should be given "great deference" by the courts). Further, a "'violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful.'"  *Id.* at 579-80 (quoting the same); *see also Waskew v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012)(quoting the same).

Brown, however, does not complain of discrimination or harassment based on gender in his October 8, 2012 administrative transfer request.  Brown specifically states that he requested a transfer because Allen does not like "surplused" teachers and that he was given a low evaluation because of Allen's bias

21

toward "surplused" teachers.  He further complains about Allen raising her voice to him and other faculty members, both male and female.  Throughout the three-page single-spaced letter, Brown makes reference to the male gender only twice.  In one sentence, he refers to Allen stating in a meeting that since Brown was a man, he shouldn't have any discipline problems.  In another sentence, he states that Allen said he should be outside helping the men with dismissal.  These two statements can hardly be construed as a complaint of gender discrimination.

The question then turns on whether the challenger has a good faith belief the practice complained of is unlawful. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).  Here, Brown could have had a reasonable, good faith belief that Allen's comments about him being "a man" and thus should not have disciplinary issues and her placement of men on outside duty was discriminatory.  Though the bulk of Brown's October 8, 2013 letter of request is centered on his concern that Allen discriminated against him because he was a surplus teacher, Brown makes reference to different treatment based on his male gender at least twice.  The court finds that Brown engaged in protected activity in writing this letter to the MEA, satisfying the first prong of a *prima facie* case of retaliation.

Even if Brown's October 8, 2012 request for an administrative transfer constituted protected activity under Title VII, Brown has failed to come forward with evidence as to the remaining prongs of a *prima facie* case of retaliation. Although Brown asserts that the SCBOE knew of his request to MEA for an administrative transfer because the MEA sent the SCBOE a copy of the letter of request, there is no evidence in the record to support this. Further, Brown has failed to offer evidence that his letter to the MEA and his termination were causally connected. Thus, he cannot make out a *prima facie* case of retaliation based on the October 8, 2012 transfer request.

c. Complaints to Branch

Finally, Brown's assertion that he "went to the top person and complained about his gender discrimination" would constitute protected activity, but this assertion is not supported by the evidence. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 28, ECF No. 40.) Brown cites his own declaration as support, with emphasis on paragraphs 17 to 53. (*Id.*) The materials he cites in these paragraphs do not show any occasion on which Brown complained of gender discrimination to the "top person." Rather, the declaration and its supporting materials make clear that Brown contacted Branch, the Director Manager of the SCBOE Department of Labor Relations, in January of 2013 to complain that he felt harassed due to his status as a

surplus teacher. (*See* Jan. 9, 2013 Correspondence, ECF No. 43-9.) Nowhere is there any mention of gender discrimination in the supporting materials. The SCBOE, on the other hand, has presented the affidavit of Branch, which states that Brown only complained to her of his treatment as a surplus teacher — not of his treatment based on gender. (Branch Aff. ¶ 11, ECF No. 12-4.) Accordingly, Brown fails to come forth with any evidence to establish the first prong of his *prima facie* case of retaliation on this argument.

Because all of Brown's bases for establishing retaliation fail, the court recommends that the SCBOE's motion for summary judgment as to the retaliation claim be granted.

C.  Brown's Common Law Whistleblower Claim

In Count Two of his complaint entitled "Mr. Brown's Common Law Whistle-blower Claim against the District," Brown brings a common-law whistleblower claim for retaliatory discharge under Tennessee law. As the SCBOE correctly notes, the Governmental Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-201, bars Brown's claim.

The GTLA provides: "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn.

Code Ann. § 29-20-201(a). Tennessee courts have held that "under the GTLA, a governmental entity is immune from liability for the common law tort of retaliatory discharge." *Baines v. Wilson Cnty.*, 86 S.W.3d 575, 579 (Tenn. Ct. App. 2002). Though it is true that governmental immunity can be waived for the negligent acts or omissions of its employees, *see Limbaugh v. Coffee Med. Ctr.*, 59 S.W. 3d 73, 79 (Tenn. 2001), "[a]n action for retaliatory discharge is by its very nature an action based on the intent of the employer to discharge the employee" for the employee's exercise of protected rights. *Baines*, 86 S.W.3d at 579 (internal quotation marks omitted); *see also Davis v. Marshall Cnty. Ambulance Servs.*, 533 F. App'x 503, 505 (6th Cir. 2013)(affirming the district court's holding that the governmental entity was immune from liability on the plaintiff's common-law retaliatory discharge claim).

Brown argues in his response in opposition that the SCBOE should be liable because "[i]t is clear that the Plaintiff is making a prima facie claim that he was injured due to the negligent act or omission of the Board's employee" and, alternatively, because "the District was negligent in hiring, training, supervising, or retaining of employees." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 5, ECF No. 43.) These claims are separate from a common-law retaliatory discharge claim, which involves intentional acts.

Because the SCBOE is immune from Brown's common-law retaliatory discharge claim, summary judgment should be granted as to this claim in favor of the SCBOE.

D.    Brown's Claims Under 42 U.S.C. § 1983

In Count Three of his complaint entitled "Mr. Brown's 42 U.S.C 1983 Property Interests Against the District" and Count Four entitled "Mr. Brown's Liberty Interests Against the District, Brown alleges claims against the SCBOE under 42 U.S.C. § 1983.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983.  It provides a method of seeking redress of deprivation of federal constitutional rights and federal statutory rights. *Albright v. Oliver*, 510 U.S. 266 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) First, that the defendant acted under color of state law, and (2) a deprivation of rights secured by the United States Constitution or federal statutory law.  *Fritz v. Charter Twp. of Cornstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir.

1989)(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). The SCBOE does not dispute that it is a state actor.

As to the second element, the Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. The Due Process Clause contains both a substantive and a procedural component. The "substantive component . . . bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)(quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The Due Process Clause also encompasses a guarantee of fair procedure, and a § 1983 action may be brought for a violation of procedural due process. *Zinermon*, 494 U.S. at 125-26. In procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional." *Id.* at 125 (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). Rather, it is the deprivation of the interest *without due process of law* that is unconstitutional. *Id.* Brown proceeds under a procedural due process claim to allege the deprivation of his property and liberty interests, as well as a substantive due process claim for the deprivation of his liberty interest.

1. *Property Interest Claim (Count Three)*

To proceed with a procedural due process claim for a deprivation of a property interest, Brown must allege (1) the deprivation of a protected property interest and (2) that, before being so deprived, he was not afforded the process due to him under the Fourteenth Amendment. *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216 (6th Cir. 2011)(citing *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000)). Where employment rights are at stake, "the root requirement of the Due Process clause" is "that an individual be given the opportunity for a hearing before he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

Accepting that Brown had a property interest in his continued employment with the SCBOE, the question remains whether he was afforded due process of law. "Property interests protected by the Constitution stem from an independent source, such as state law, and are not created by the Constitution itself." *Sharp v. Lindsey*, 285 F.3d 479, 487 (6th Cir. 2002). In the instant case, the state law that gives rise to Brown's property interest in his employment is Tenn. Code Ann. §§ 49-5-511 and 49-5-512. Section 49-5-511(a) provides in relevant part:

> (4) When charges are made to the board of education against a teacher, charging the teacher with offenses that would justify dismissal of the teacher under the

28

terms of this part, the charges shall be made in
writing, specifically stating the offenses that are
charged, and shall be signed by the party or parties
making the charges.

(5) If, in the opinion of the board, charges are of
such a nature as to warrant the dismissal of the
teacher, the director of schools shall give the
teacher a written notice of this decision, together
with a copy of the charges and a copy of a form, which
shall be provided by the commissioner of education,
advising the teacher as to the teacher's legal duties,
rights and recourse under the terms of this part.

After receipt of a notice of charges brought pursuant to §
49-5-511, a tenured teacher can request a full and complete
hearing before an impartial hearing officer. Tenn. Code Ann. §
49-5-512(a). At the hearing, all parties have the right to be
represented by counsel, the opportunity to call and subpoena
witnesses, and the opportunity to examine all witnesses. *Id.* §
49-5-512(a)(4). The hearing officer then issues a decision and
submits findings of fact and conclusions of law as to the
outcome. If the affected teacher desires to appeal a decision
made in favor of the school system, the teacher must exhaust
administrative remedies and appeal the decision to the board of
education within ten days of the hearing officer's issuance of
written findings of fact, conclusions, and decision. *Id.* § 49-
5-512(c)(1).

In the instant case, Brown received written notice of his
suspension on June 11, 2013, as well as notice that a charge of
inefficiency and a recommendation of dismissal would be brought

29

against him.  On January 29 and 30 of 2014, Brown was afforded a hearing before an impartial hearing officer, in which he was represented by counsel, presented and examined evidence, and presented and cross-examined witnesses in compliance with Tenn. Code Ann. §§ 49-5-511 and 49-5-512.  After the hearing, the hearing officer issued an opinion on March 10, 2014, and her findings of fact and conclusions of law on March 13, 2014. Brown did not appeal the hearing officer's decision.

All of these undisputed facts verify that the SCBOE met the procedural due process requirements set forth in Tenn. Code. Ann. §§ 49-5-511 and 49-5-51 and therefore satisfied the procedural due process requirements of the Fourteenth Amendment. Process was afforded to Brown, and he did not exhaust his administrative remedies by appealing the hearing officer's decision.  Accordingly, the court recommends that summary judgment be granted as to Brown's procedural due process claim.

2.  *Liberty Interest Claim (Count Four)*

Brown also alleges that he was deprived of a liberty interest — his reputation in the educational community — when the SCBOE filed "pretextual" charges of unprofessional conduct and brought false charges.  (Compl. ¶¶ 100-02, ECF No. 1.)  He asserts he is entitled to a "name-clearing hearing trial by jury and an award of damages."  (*Id.* ¶ 102.)

The Sixth Circuit has established a five-factor test to determine whether a plaintiff was deprived of a liberty interest and entitled to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002)(quoting *Brown v. City of Niota*, 214 F.3d 718, 722-23 (6th Cir. 2000)). If the plaintiff satisfies these elements, "he is entitled to a name-clearing hearing if he requests one." *Id.* (internal quotation marks omitted).

Brown argues that the SCBOE made statements about his inadequate performance to the public, which damaged his standing in the educational community. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 7, ECF No. 43.) The SCBOE counters that the statements complained of by Brown are only allegations of improper and inadequate performance, which fails under the second prong of the five-part test. (Def.'s Mem. in Supp. of Mot. for Summ. J. 6, ECF No. 12-2.)

Brown has failed to come forth with any evidence that the statements made by the SCBOE concern anything other than Brown's

inadequate performance or incompetence as a teacher. Further, Brown has not presented any proof that the statements were made public, other than his own unsubstantiated allegations based on hearsay. It is undisputed that Brown's charge of inefficiency was based on his low TEM scores and poor reviews. It is also undisputed that statements made during the course of Brown's review by the SCBOE and tenure hearing in reference to his efficiency and evaluation scores were made only to employees of the SCBOE in determining whether to re-elect or dismiss Brown. Brown makes a claim that the meeting of the SCBOE was "broadcast on television and radio from the Plaintiff's understanding," (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 7, ECF No. 43), but he has offered no evidence to support this allegation. Accordingly, the court recommends that Brown's § 1983 claim for deprivation of a liberty interest be dismissed.

E.   Brown's Gender Discrimination Claim

In Count Five of his Complaint, Brown asserts that he was treated differently on the basis of his gender in violation of Title VII. He specifically makes claims under both disparate treatment and disparate impact theories. He also seems to make a hostile environment claim.

1.   *Disparate Treatment*

A plaintiff can prove disparate treatment either by direct evidence or circumstantial evidence. Direct evidence means

evidence that "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 584 (6th Cir. 2003)(internal quotation marks omitted). It does not require the fact-finder to draw inferences, *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005), and improper motivation must be explicitly expressed, *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006). An example includes an employer telling an employee, "I fired you because you are disabled [or elderly]." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). None of the facts alleged by Brown show any statement made by Allen or any other employee of the SCBOE that contain explicit improper motivation. All of Brown's allegations would require an inference of discrimination. Thus, Brown has failed to come forth with direct evidence of gender discrimination, and he must rely on circumstantial evidence.

To determine if Brown can establish a claim for gender discrimination through circumstantial evidence, the court must apply the three-step burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of gender discrimination. *McDonnell,* 411 U.S. at 802. If the plaintiff succeeds, the defendant must "articulate

some legitimate, nondiscriminatory reason" for the termination. *Id.* "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003). The plaintiff bears the "ultimate burden of persuasion" to show that the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). In cases of reverse discrimination where, as here, a member of the majority claims discrimination, the Sixth Circuit requires an additional showing. *Sutherland*, 344 F.3d at 614-15; *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 801 (6th Cir. 1994). To satisfy the first prong of the *prima facie* case, the plaintiff must "demonstrate 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Sutherland*, 344 F.3d at 614 (quoting *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255

(6th Cir. 2002)). As to the fourth prong, "the plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Id.*

Brown fails to present any evidence either that the SCBOE is the "unusual employer who discriminates against the majority," or that there were similarly situated female employees treated more favorably than he was. Indeed, Brown has failed to specifically identify any female employee at Charjean Elementary who was similarly situated and received more favorable evaluations or was treated more favorably by Allen than Brown. Rather, Brown provides several declarations of female employees — including Fachel Williams, Rhonda Hemingway, Jocelyn Ford, and Christal Tharp — which show that many employees of Charjean Elementary, whether male or female, were treated poorly by Allen. Further, the declaration of Fachel Williams, a female, indicates that she was also terminated for poor performance. (*See* Williams Decl., ECF No. 43-2.)

As to Brown's assertions that males were treated differently because they were placed on outside duty, these allegations have been rebutted by the SCBOE. The declaration of Allen states that at least one other male faculty member had dismissal duty inside the school cafeteria, female teachers also took their students outdoors to the buses during dismissal, and

Brown had the option to stay indoors to monitor an access door of the school. (Allen Decl. ¶¶ 10-12, ECF No. 12-5.)

Even were Brown able to establish a *prima facie* case of discriminatory treatment, the SCBOE has offered a legitimate nondiscriminatory reason for its termination of Brown — Brown's low TEM scores — and Brown has not come forth with evidence to show pretext. *See* discussion *supra* Part II.B.1. Accordingly, the court recommends that the SCBOE's motion for summary judgment as to Brown's disparate treatment claims be granted.

2. *Disparate Impact*

Under a disparate impact theory, a plaintiff must show that a facially neutral employment practice has a more harsh impact on one group than another, and the practice is not justified by business necessity. *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 629 (6th Cir. 2008). A showing of discriminatory intent is not required. To establish a *prima facie* case, a plaintiff must (1) identify a specific employment practice to be challenged; and (2) prove that the challenged practice has an adverse impact on a protected group through relevant statistical analysis. *Id.* at 629.

Brown has cited the employment practices of placing men on outside duty and assigning men to teach predominately African American classrooms. However, he has not provided any relevant statistical analysis to show that the challenged practices have

an adverse impact on men. Brown merely relies on his own unsupported declaration to argue he received more African American students than Ms. Dunlap, who had more Hispanic students. (Pl.'s Resp. in Opp'n to Def.'s Mot for Summ. J. 9, ECF No. 43.) African American students, he argues, have more difficult behavioral problems. (*Id.*) The court is not persuaded that these employment practices — even if they did exist at Charjean Elementary School — had an adverse impact on men's job performance, and Brown has offered no evidence of such an impact. Accordingly, summary judgment should be granted on Brown's disparate impact claim.

3. *Hostile Work Environment*

Under Title VII, to establish a hostile work environment claim based on sexual harassment, Brown must show: (1) he was a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Randolph*, 453 F.3d at 733. In the Supreme Court's decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), the Court explained that a hostile environment is a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment."

*Id.* at 21 (citations and internal quotation marks omitted). The conduct must be severe or pervasive enough, both subjectively and objectively, such that a reasonable person would find it hostile and the victim found it hostile. *Id.* at 21-22. Relevant factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance." *Id.* at 23.

Brown fails to show that the harassment he experienced — Allen's comments that "you a man," that he should be able to handle his classroom, and that he should be on outside duty — is severe and pervasive enough to create a hostile work environment. Even if true, these scattered references to Brown's gender are not of the frequency, severity, or level of offensiveness such that they altered the conditions of Brown's employment and created an objectively abusive work environment. At most, they amounted to "mere offensive utterances." The court therefore recommends that Brown's hostile environment claim be dismissed as a matter of law.

F.    Brown's Libel Claim

In Count Six of his complaint entitled "Mr. Brown's Defamation-Libel against the District," Brown alleges that Allen and Helminski made false statements in their assessments of

Brown and in overstating the number of hours they observed his classroom. (Compl. ¶¶ 109-11, ECF No. 1.) He argues that the SCBOE is liable for these intentional acts because of its own negligence in supervising and hiring Allen. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 10, ECF No. 43.)

As with Brown's common law whistleblower claims, the GTLA bars Brown's claim for libel based on the negligence of the SCBOE. *See* discussion *supra* Part II.C. Tenn. Code. Ann. § 29-20-205 provides in relevant part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except if the injury arises out of*:
>
> . . . .
>
> (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, *libel*, *slander*, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights.

Tenn. Code. Ann. § 29-20-205 (emphasis added). Case law likewise makes clear that based on this statute, "a governmental entity retains immunity under the GLTA for negligence claims that arise from claims for . . . libel." *Jackson v. Thomas*, No. M2010-01242-COA-R3CV, 2011 WL 1049804, at *5 (Tenn. Ct. App. Mar. 23, 2011). Because the SCBOE is immune from Brown's libel claim, summary judgment should be granted as to this claim in favor of the SCBOE.

G.  Brown's Aiding and Abetting Tort Claim

In Count Seven of his complaint entitled "Mr. Brown's Aiding & Abetting Tort against District," Brown alleges that Allen and Helminski aided and abetted each other in engaging in tortious conduct toward him, including forging certain letters and defaming him.  (Compl. ¶¶ 112-13, ECF No. 1.)

The common law tort of aiding and abetting is embodied in the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-301.  The THRA is a comprehensive anti-discrimination statute, intended to be coextensive with federal law.  *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 834-35 (Tenn. 1997), *overruled on other grounds*, *Parker v. Warrant Cnty. Util. Dist.*, 2 S.W.3d 170 (Tenn. 1999).  Section 4-21-301 creates accomplice liability and states:

> It is a discriminatory practice for a person or for two (2) or more persons to:
> . . . .
> (2) Aid, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory by this chapter.

Although the statute does not define "aiding and abetting," the common law civil liability theory of aiding and abetting requires that the "defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts."  *Carr*, 955

S.W.2d at 836 (quoting *Cecil v. Hardin*, 575 S.W.2d 268, 272 (Tenn. 1978)).

Brown has not brought forth any evidence to show that the elements of the aiding and abetting tort are satisfied. He makes uncorroborated allegations that Helminski and Allen falsified letters and defamed him in assistance of each other by publishing false information about him during school board meetings, which were visible "on television" and harmed his reputation as an educator. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 10-11, ECF No. 43.) Even if true, Brown does not argue that these acts of defamation were discriminatory within the meaning of the THRA, which bars discrimination for race, creed, color, religion, sex, age, or national origin. *See* Tenn. Code Ann. § 4-21-101 (describing the purpose of the THRA). Thus, the THRA does not make unlawful the acts alleged by Brown concerning statements made about his performance scores as a teacher, and aiding and abetting liability cannot be based on these allegations. The court recommends dismissal of this claim.

## H.    Brown's Civil Conspiracy Claim

In Count Eight of his complaint, Brown alleges that Helminski and Allen committed civil conspiracy when they engaged in a common design to terminate his employment by submitting

forged documents "to labor relations." (Compl. ¶ 114, ECF No. 1.)

Civil conspiracy requires "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). When "the conspiratorial conduct is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment," a claim of conspiracy cannot be sustained. *Id.* at 703-04. To be actionable, an intra-corporate conspiracy must allege that the corporate officials, employees, or agents acted outside the scope of their employment to engage in conspiracy in furtherance of their own personal purposes and not the corporation's. *Id.* at 704.

In the present case, it is undisputed that it was Allen's responsibility as the on-site supervisor to report employees' performance issues to the SCBOE Department of Labor Relations. Further, Helminski performed reviews of Brown as a part of her role as his PAR advisor. Neither Helminski nor Allen received any benefit from or engaged in any conduct with regard to their recommendations, observations, feedback, or evaluations of Brown

for any personal purpose. Because Brown has not even alleged nor presented evidence that either Helminski or Allen were acting outside the scope of their employment in pursuit of a personal purpose, SCBOE is entitled to judgment as a matter of law on Brown's civil conspiracy claim.

I.   Brown's COBRA Claim

In Count Nine of his complaint entitled "Violations of COBRA Notice Penalty Claims," Brown asserts that SCBOE failed to provide him with notice of his COBRA rights regarding his health insurance, which was terminated on July 29, 2013. (Compl. ¶ 115, ECF No. 1.)  The SCBOE has moved for summary judgment on Brown's COBRA claim, and in his response to the motion for summary judgment, Brown filed a cross-motion for summary judgment as to the same claim.  The SCBOE argues in its reply that Brown's cross-motion is untimely because the dispositive motion deadline was March 25, 2014. (Def.'s Reply 1, ECF No. 48.)  Although Brown's cross-motion for summary judgment was not filed by the dispositive motion deadline, the court will nevertheless consider Brown's cross-motion because the court can grant summary judgment for the non-moving party at any time. *See* Fed. R. Civ. P. 56(f).

COBRA requires that in the event of certain qualifying events, an employer who sponsors a group health insurance plan must give notice to an employee of his COBRA rights. *See* 29

U.S.C. §§ 1163, 1166.  Examples of qualifying events include an employee's death, termination or reduction of hours, divorce or legal separation, and entitlement to Social Security benefits. *See* 29 U.S.C. §§ 1163, 1166.  When a covered employee's coverage would be lost due to one of these qualifying events, an employer must notify the qualified beneficiary of his right to continue coverage.  *Id.* § 1166(a)(4), (c).

The COBRA statute does not specifically provide what constitutes sufficient notice.  "Nevertheless, the notice given must be sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage."  *McDowell v. Krawchison*, 125 F.3d 954, 958 (6th Cir. 1997).  Courts in the Sixth Circuit have held that "a good faith attempt to comply with a reasonable interpretation of the statute is sufficient." *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 906 (W.D. Mich. 2002); *see also Fadalla v. Life Auto. Prods., Inc.*, No. 06-2679, at 12-14 (W.D. Tenn. Jan. 12, 2009)(ECF No. 218)(order granting in part and denying in part summary judgment, finding as a matter of law that the defendant did not provide sufficient COBRA notice to the plaintiff after termination when the defendant provided inaccurate information regarding his ability to elect health coverage); *Joiner v. Dreisenga & Assocs., Inc.*, No. 1:04-CV-437, 2005 WL 2090899, at *3 (W.D. Mich. Aug. 29, 2005).  One court in this district noted

that adequate notice may contain: "'(1) that [the qualified
beneficiary] can elect to continue coverage after a qualifying
event; (2) that [the qualified beneficiary] has sixty days to
elect continued coverage from the date that coverage would
cease; (3) that coverage may continue for a maximum of eighteen
months; and (4) that she is obligated to pay premiums.'"
*Fadalla*, No. 06-2679, at 13 (quoting *Rodriguez v. Int'l Coll. Of
Bus. & Tech., Inc.*, 364 F. Supp. 2d 40, 47 (D.P.R. 2005)).

In the present case, it is undisputed that on June 11,
2013, Brown was notified that he would be placed on suspension
without pay effective July 29, 2013 and that tenure charges and
a recommendation would be made to the SCBOE to dismiss him as a
tenured teacher. In the same letter, Brown was also instructed
to contact the Division of Employee Benefits to inquire about
insurance premiums. (*See* Brown Dep., Ex. 8, ECF No. 12-3.)
The letter did not specifically inform Brown of his right to
continued coverage under COBRA for eighteen months if he paid
the full premium, it did not designate the amount of such
premium, nor did it contain any reference to COBRA. (*See id.*)
In sum, the letter did not contain sufficient information to
permit Brown to make an informed decision regarding his COBRA
rights because it did not contain any information about
insurance coverage at all.

The SCBOE argues that Brown was suspended, not terminated, at the time of the June 11, 2013 letter, and suspension is not a "qualifying event" under 29 U.S.C. § 1163 that triggers its COBRA notice obligations.[10]  The court disagrees with the SCBOE's interpretation of § 1163.  The statute states that "termination (other than by reason of such employee's gross misconduct), *or reduction of hours*" are qualifying events if the result is the loss of coverage to a qualified beneficiary.  *Id.* § 1163(2).  Brown's hours were reduced by his suspension, which would result in his loss of coverage on July 29, 2013.

The SCBOE next argues Brown was apprised of his right to continued coverage before he was terminated.  Brown testified in a deposition on February 6, 2014 that when he spoke with the Division of Employee Benefits and met with the Department of Labor Relations, he was told that he could keep his insurance if he paid $900 per month.  (Brown Dep. 69:22-70:25, ECF No. 12-3.)  Brown testified that he did not hear any reference to COBRA, and he declined to keep health coverage.  (*Id.*)

The court finds that a question of fact remains as to the notice that Brown ultimately received regarding his COBRA rights.  The June 11, 2013 letter of suspension alone does not

---

[10]   Brown's termination became effective on March 10, 2014, after the hearing officer found that the SCBOE satisfied its burden to prove that there was just cause to terminate.  Thus, the SCBOE contends, COBRA notice was not due until after March 10, 2014.

amount to sufficient COBRA notice because it did not allow Brown to make an informed decision; however, Brown's later interactions with the Division of Employee Benefits and Department of Labor Relations raise an issue of material fact as to whether Brown eventually received adequate COBRA notice. Accordingly, the court recommends that both the SCBOE's motion for summary judgment and Brown's cross-motion for summary judgment on this issue be denied.

J.  Brown's Negligent Supervision and Negligent Training Claims

In Count Ten of his complaint entitled "Negligent Supervision against Defendant" and in Count Eleven entitled "Negligent Training against Defendant," Brown claims that the SCBOE negligently supervised and trained Allen and Helminski because they fraudulently recommended him for termination and were not adequately trained to perform teacher evaluations. (Compl. ¶¶ 119-20, ECF No. 1.)

Tennessee recognizes a cause of action for negligent hiring, supervision, and retention where an "employee establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008); *see also Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012)(wherein Brown sued Mapco under the same theory). Elements of a

negligence claim include a duty of care owed to the plaintiff, breach of that duty by the defendant, injury or loss, actual causation, and proximate causation. *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004).

Brown has failed to present any evidence establishing the elements of his underlying negligence claim. First, assuming that Allen and Helminski owed a duty of care in evaluating Brown, Brown has not shown that they breached this duty by allegedly improperly evaluating him. He makes unsupported and general allegations that they falsified his TEM scores, but there is no evidence in the record to support this other than Brown's belief that he should have scored better.

In his response to the motion for summary judgment, Brown also alleges that Allen was unfit for her position based on her poor treatment of teachers, which included yelling at them and assaulting one secretary. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 16, ECF No. 43.) Assuming this was a breach of some unidentified duty to Brown, there is no evidence to show that this breach caused Brown's termination. The court cannot make out a causal connection between Allen's alleged poor treatment of many employees of Charjean Elementary School and Brown's ultimate termination for low TEM scores. The court recommends judgment as a matter of law in favor of the SCBOE on this claim.

K.  Brown's Claim of Fraud

In Count Thirteen of his complaint entitled simply "Fraud," Brown alleges that the SCBOE is liable for common law fraud because Allen forged four letters to him, Helminski claimed in a letter she wrote regarding Brown that she gave him teaching strategies and he failed to follow them, and Helminski fraudulently overstated the length of time she observed and graded him in the classroom.  (Compl. ¶¶ 124-26, ECF No. 1.) He claims that he was injured by these fraudulent acts in that he was suspended from employment.

In Tennessee, the elements of fraud are "(1) an intentional misrepresentation of material fact, (2) knowledge of the representation's falsity, . . . (3) an injury caused by reasonable reliance on the representation," and (4) "the misrepresentation involved a past or existing fact." *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. 1992).  Tennessee courts are clear that "[f]raud is never presumed," and that "the facts sustaining it must be clearly made out." *Holt v. Wilmoth*, 336 S.W.3d 234, 239 (Tenn. Ct. App. 2010)(internal quotation marks omitted).  The party asserting fraud bears the burden of proving all the elements of his case, meaning Brown must not only prove the letters and scores were inaccurate, but that the SCBOE knew it was inaccurate. *See id.*

Brown has not come forth with proof that the letters complained of were falsified by Allen and Helminski, that Helminski overstated the length of time she evaluated Brown's classroom, or that Helminski falsely stated that she gave Brown teaching strategies that he failed to adopt. As with previous claims, Brown relies on his own declaration, which only restates his allegations in more detail without outside evidentiary support. (*See* Brown Decl. ¶¶ 24, 36-40, ECF No. 43-1.) This does not satisfy his burden of showing that the letters were fraudulent. Further, there has been no showing that the SCBOE knew or had reason to know of these alleged inaccuracies. Finally, Brown cannot establish that he relied on alleged fraudulent statements to his detriment.[11] Accordingly, summary judgment should be granted on Brown's fraud claim.

L.  Brown's Breach of Contract Claim

In Count Twelve of his complaint, Brown claims that he had a contract for further employment with the SCBOE, which it "maliciously breached" when it relied on the alleged fraudulent letters of Allen and Helminski and terminated him. To establish breach of contract, a plaintiff must prove (1) the existence of

---

[11] In his response to SCBOE's motion for summary judgment, Brown tries to establish the reliance element by a circuitous argument that he relied on false TEM scores in deciding to enter the PAR program, which resulted in a recommendation that he be terminated. Brown did not raise these allegations in his complaint, and the court will not consider them now.

a contract, (2) nonperformance of the contract amounting to breach, and (3) damages caused by the breach. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006).

Having found that Brown's claim of fraud cannot survive, the court finds Brown's breach of contract claim, which relies on his underlying claim of fraud to prove the breach element, also fails as a matter of law.

M.   Brown's Implied Covenant of Good Faith and Fair Dealing

In Count Fourteen of his complaint, Brown alleges that the SCBOE violated an implied covenant of good faith and fair dealing by terminating his employment based on "false allegations and false letters" and "with malice."  In Tennessee, an action for bad faith is not a stand-alone claim: "good faith or the lack of it may be an element or circumstance of recognized torts, or breaches of contracts, but it does not appear that good faith, or the lack of it is, standing alone, an actionable tort."  *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989); *see also Wallace v. Nat'l Bank of Commerce*, 938 S.W.d 684, 685 n.1 (Tenn. 1996)("The Court of Appeals has held that in Tennessee there is no cause of action in tort for breach of the duty of good faith in the performance of a contract.")   The SCBOE's motion for summary judgment should be granted as to this claim.

N.   Brown's Claim Under the Tennessee Teacher Tenure Act

In Count Fifteen of his complaint, Brown complains that he was not afforded a timely tenure hearing under the Tennessee Teacher Tenure Act, Tenn. Code Ann. § 49-5-512. He argues that "although the provision does not state a time for the Board of Education to take action. [sic] It is clear that the lawmakers did not intend for the process to take two years or longer." (Compl. ¶¶ 130-31, ECF No. 1.) Brown cites no authority for this argument, nor can the court find one.

The undisputed facts show that the SCBOE complied with the requirements of § 49-5-512 by providing him a tenure hearing on January 29-30, 2014 before an impartial hearing officer, in which he had the opportunity to be represented by counsel, present and cross-examine witnesses, and present and challenge evidence. The hearing was held within three months of the time the charges of inefficiency were filed. There is no time requirement imposed by the statute. Brown's claim that his hearing was untimely under the Tennessee Teacher Tenure Act thus fails as a matter of law.

O.   Brown's Tennessee Public Protection Act Claim

In Count Sixteen of his complaint, Brown alleges that the SCBOE violated the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304, because he reported illegal activities — namely, corporal punishment and sealed windows at Charjean Elementary — which caused him to be terminated.

(Compl. ¶¶ 132-33, ECF No. 1.)   The TPPA prohibits an employer from terminating an employee "*solely* for refusing to participate in, or refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b)(emphasis added).   "Illegal activities" mean "activities that are in violation of the criminal or civil code of the state or the United States or any regulations intended to protect the public health, safety, or welfare."   Tenn. Code Ann. § 50-1-304(a)(3).   Under the TPPA, a plaintiff must establish (1) that he was an employee of the employer, (2) he refused to participate in or remain silent about "illegal activities" as defined by the TPPA, (3) he was terminated, and (4) there was an exclusive causal relationship between his refusal to remain silent or participate in illegal activities and his termination.   *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006).

In a retaliatory discharge action brought under the TPPA, the burden is on the plaintiff to establish a *prima facie* case. Tenn. Code Ann. § 50-1-304(g).   "If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate non-discriminatory reasons existed for the plaintiff's discharge."   *Id*.   Then, "the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the

plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation." *Id.*

Assuming for the sake of analysis that Brown did report activities that are illegal within the meaning of the TPPA, he has not brought forth any evidence to establish the element of sole or exclusive causal connection between his reporting of these activities and his termination. Indeed, the undisputed facts show that Brown was terminated for inefficiency based on his low TEM scores. A subsequent tenure hearing, wherein evidence and witnesses were presented on Brown's charge of inefficiency, upheld this result and found just cause for his termination on this basis. Significantly, Brown's first low TEM scores were earned before Brown was assigned to Charjean Elementary and before he allegedly reported any allegedly illegal activities. Thus, there is unrebutted evidence of a non-pretextual reason for Brown's termination. Because the court finds an exclusive causal connection to be lacking, it recommends that summary judgment should be granted on Brown's TPPA claim.

P.    Brown's Claim Regarding the TEM Program of Evaluation

Finally, Brown asserts in his complaint that the TEM system of evaluating teachers is unfair, but he does not state any legal basis for his claim. (Compl. ¶¶ 134-38, ECF No. 1.)    In his response to the SCBOE's motion for summary judgment, he

explains that "[i]t is clear that the Plaintiff is not making a claim under this section but rather seeking injunctionary [sic] relief." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 22, ECF No. 4.)

Because Brown's allegations about flaws in the TEM system are solely based on his personal observations and because he does not name the legal basis of his claim, the court recommends dismissal of his challenge to the TEM program.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the SCBOE's motion for summary judgment be granted on all claims except for Brown's COBRA claim and that Brown's cross-motion for summary judgment on his COBRA claim be denied.

Respectfully submitted this 1st day of July, 2014.

S/ Diane K. Vescovo
Diane K. Vescovo
United States Magistrate Judge

### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. FED. R. CIV. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.