IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| KIM BROWN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-2586 |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | |
| SHELBY COUNTY SCHOOLS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Magistrate Judge's July 1, 2014 Report and Recommendation (the "Report") recommending that Defendant Shelby County Schools Board of Education's (the "SCBOE") March 24, 2014 motion for summary judgment be granted in part and denied in part and that Plaintiff Kim Brown's ("Brown") April 28, 2014 cross-motion for summary judgment be denied. (Rep., ECF No. 59.) On July 15, 2014, Brown filed a timely objection to the Report. (Obj., ECF No. 62.) For the following reasons, the Magistrate Judge's Report is ADOPTED. The SCBOE's motion for summary judgment is GRANTED in part and DENIED in part and Brown's cross-motion for summary judgment is DENIED.

## I.    BACKGROUND

This case arises out of the dismissal of Kim Brown from his teaching position with the SCBOE.    (See Rep., ECF No. 59) Brown, a tenured teacher, was suspended and ultimately dismissed after the 2012-2013 school year. (Id.)

On July 31, 2013, Brown filed a pro se complaint, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161-1168, and various Tennessee laws.    (Pro Se Compl., ECF No. 1.)    The parties conducted discovery, and on March 24, 2014, the SCBOE moved for summary judgment on all counts, pursuant to Federal Rule of Civil Procedure 56.    (Mot. for Summ. J., ECF No. 12.) On April 21, 2014, Chief United States Magistrate Judge Diane K. Vescovo granted Brown's motion for extension of time to file a response. (Order, ECF No. 35.)    On April 28, 2014, Brown filed a response in opposition and a cross-motion for summary judgment. (Pl.'s Resp. in Opp'n to Def.'s Mot for Summ. J., ECF No. 43.) Brown's cross-motion for summary judgment pertains only to his COBRA claim.[1]    (Id.)    On May 8, 2014, the SCBOE replied to Brown's response and responded to Brown's cross-motion for summary judgment. (Def.'s Reply, ECF No. 48.)

_____

[1] The dispositive motions deadline was March 25, 2014. (Scheduling Order, ECF No. 6.)    Because the Court can grant summary judgment for the non-moving party at any time, the Magistrate Judge considered Brown's cross-motion for summary judgment.  See Fed. R. Civ. P. 56(f).

On July 1, 2014, the Magistrate Judge issued a report and recommendation, recommending that the Court grant the SCBOE's motion for summary judgment on all claims except Brown's COBRA claim and that Brown's cross-motion for summary judgment on his COBRA claim be denied.  (Rep., ECF No. 59.)  On July 15, 2014, Brown filed a timely objection to the Report.  (Obj., ECF No 62.)  The SCBOE filed its response to Brown's objection on July 29, 2014.  (Resp., ECF No. 64.)

## II.  JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Brown raises federal questions under Title VII, 42 U.S.C. §§ 2000e, et seq. and COBRA, 29 U.S.C. §§ 1161-1168.  The Court has supplemental jurisdiction over the remaining state law claims because they derive from a "common nucleus of operative fact."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

## III. STANDARD OF REVIEW

### A.  Pro Se Litigant Standard

"Pro se [pleadings] are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011)(internal quotation marks omitted). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. See Brown v. Matauszak,

No. 09-2259, 2011 WL 285251, at *613 (6th Cir. Jan. 31, 2011).
"While courts are properly charged with protecting the rights of
all who come before it, that responsibility does not encompass
advising litigants as to what legal theories they should
pursue." Young Bok Song v. Gipson, No. 09-5480, 2011 WL 1827441,
at *510 (6th Cir. May 12, 2011).

**B.   Review of Magistrate Judge's Report**

Congress enacted 28 U.S.C. § 636 to relieve the burden on
the federal judiciary by permitting the assignment of district
court duties to Magistrate Judges.  See United States v. Curtis,
237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United
States, 490 U.S. 858, 869-70 (1989)); see also Baker v.
Peterson, 67 F. App'x 308, 310 (6th Cir. 2003).  "A district
judge must determine de novo any part of a Magistrate Judge's
disposition that has been properly objected to."  Fed. R. Civ.
P. 72(b); 28 U.S.C. § 636(b)(1)(C).  After reviewing the
evidence, the Court is free to accept, reject, or modify the
proposed findings or recommendations of the Magistrate Judge.
28 U.S.C. § 636(b)(1)(C).  The district court is not required to
review—under a de novo or any other standard—"any issue that is
not the subject of an objection."  Thomas v. Arn, 474 U.S. 140,
150 (1985).  The district court should adopt the findings and
rulings of the Magistrate Judge to which no specific objection
is filed.  Id. at 151.

"Overly general objections do not satisfy the objection requirement." Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006). Objections to any part of a Magistrate Judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995); see also Arn, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380). A general, frivolous, or conclusory objection will be treated as if no objection had been made. Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991); see also Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986) ("[T]he district court need not provide de novo review where the objections are '[f]rivolous, conclusive or general.'" (quoting Nettles v. Wainwright, 677 F.2d 404, 410 n. 8 (5th Cir.1982)).

## C.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, the Court shall grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party can meet this burden by pointing out to the Court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in [his] favor."

Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1).  The Court does not have the duty to search the record for such evidence.  See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).  The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor.  See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action, rather than a disfavored procedural shortcut."  FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

## IV. ANALYSIS

Brown has objected to the Magistrate Judge's recommendations on nearly every count.  The Court will analyze the effect of each objection by discussing each count individually.

## A. Title VII Retaliation Claim

In Count One of his complaint, Brown alleges wrongful termination based on retaliation.  (Pro Se Compl., ECF No. 62 ¶¶

88-94.)  To succeed on a Title VII retaliation claim, Brown must show:

> (1) [he] engaged in activity protected under Title VII; (2) the defendant knew that [he] engaged in the protected activity; (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the protected activity and the adverse action were causally connected.

Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 736 (6th Cir. 2006).  If those elements are successfully established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  Johnson v. Univ. of Cincinnati, 215 F.3d 561, 573 (6th Cir. 2000).  If the defendant articulates a legitimate, non-discriminatory reason for the adverse action, the burden shifts back to the plaintiff to show that that reason was merely a "pretext to hide unlawful discrimination."  Id.

Two activities are protected under 42 U.S.C. § 2000e-3. The statute protects an employee who "opposed any practice made an unlawful employment practice" under Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3.  Brown claims that he engaged in both protected activities.

## 1. EEOC Charge

Brown alleges that he filed a charge with the EEOC on June 18, 2013, and was subsequently discharged. The Magistrate Judge found that, because Brown did not file the EEOC charge until after he was suspended, received notice of his suspension, and was notified that tenure charges[2] and a recommendation of dismissal would be made to the SCBOE,[3] he could not meet his burden on the first three elements of a Title VII retaliation claim. (Rep., ECF No. 59 at 17-18.)

The Magistrate Judge also found that, even if Brown were able to meet his burden, the SCBOE has proffered legitimate, non-discriminatory reasons for his termination as a teacher. (Id. at 18.) The reasons are Brown's inefficiency and his low Teacher Effectiveness Measure ("TEM") scores[4] from the 2011-2012 and 2012-2013 school years. (See Branch Aff. ¶ 19, ECF No. 12-4; TEM Score, ECF No. 12-4; Allen Aff. ¶¶ 7-8, ECF No. 12-5; Helminski Aff. ¶ 6, ECF No. 12-6.) The Magistrate Judge found that "Brown has offered no argument or evidence beyond his own

---

[2] "Tenure charges" refers to charges Dorsey E. Hopson, Superintendent of the SCBOE, made against Brown to "support[] the recommendation for [Brown's] dismissal." (Tenure Charges, ECF No. 12-10.) Tenure charges are required under the Tennessee Teacher Tenure Act, Tenn. Code Ann. § 49-5-511, before a tenured teacher can be dismissed.

[3] On June 11, 2013, Brown was notified that he would be suspended without pay and that tenure charges and a recommendation of dismissal would be made to the SCBOE. (Rep., ECF No. 59 at 8.)

[4] TEM scores are used to evaluate teacher performance levels. The scores range from 1 to 5, with 3 indicating that a teacher "meets expectations" and below 3 meaning subpar performance. (See TEM Score, ECF No. 43-4; Branch Aff., ECF No. 12-4.)

speculation" to show that the proffered reasons are mere pretext. (Rep., ECF No. 59 at 18-19.)

Brown objects by reasserting his prior argument that the SCBOE falsified his TEM scores and, therefore, that the SCBOE's proffered reasons are pretextual. (Obj., ECF No. 62. At 3.) For purposes of this claim, only the pretext issue is before the Court for de novo review.

Brown does not cite any evidence that supports his theory. He offers copies of TEM score sheets from two different dates and argues that, because the scores are different, the SCBOE must have falsified the later score sheet. (Id. at 6 (One score sheet is as of May 16, 2013, and shows a score of 3. The other score sheet is as of January 17, 2014, and shows a score of 1).) The hearing officer's Findings of Fact and Conclusions of Law explain that Brown's preliminary score for the 2012-2013 school year was a 3 and his final score was a 1. (Hr'g Officer Report, ECF No. 12-11 ¶ 13.) The evidence Brown offers corroborates the SCBOE's theory that the TEM scores changed from a preliminary score to a final score. The change in scores is not evidence of falsification. A reasonable jury could not conclude from the evidence Brown offers that the SCBOE's proffered reasons are pretextual.

Even if a jury could conclude that the proffered reasons were pretextual, Brown has not objected to the Magistrate

Judge's determination that Brown could not satisfy the first three prongs of a <u>prima facie</u> case of Title VII retaliation.

## 2. Opposition Activity Claims

Brown also alleges several instances of opposition activities. He claims that he lodged complaints about child abuse and safety hazards at Charjean Elementary School. (<u>Pro Se</u> Compl. ¶¶ 89, 92, 93.) He claims that he wrote a letter to the Memphis Education Association ("MEA") on October 8, 2013, in which he requested an administrative transfer to another school and complained that he had been harassed by Tameka Allen ("Allen"), the principal at Charjean Elementary. (<u>See</u> Req. for Admin. Transfer, ECF No. 43-8.) In his letter, Brown asserted that the harassment occurred because he was a "surplused teacher." (<u>Id.</u>) Brown also claims that, on January 7, 2013, he complained of gender discrimination to Chantay Branch ("Branch"), the Director Manager of the SCBOE Department of Labor Relations. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 43 at 2-3; <u>see also</u> <u>Pro Se</u> Compl. ¶ 25.)

## a. Abuse and Safety Hazard Opposition

To succeed on a Title VII retaliation claim, Brown must show that he engaged in activity protected under Title VII. Title VII protects against discrimination in employment on the basis of "race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. The Magistrate Judge determined that

"[c]hild abuse and violations of safety hazards do not fall within the purview of Title VII." (Rep., ECF No. 59 at 20-21.) Brown does not object to that finding.

**b.    Request for Administrative Transfer**

The Magistrate Judge found that Brown's administrative transfer request did not specifically complain of gender discrimination. (Id. at 21.) Brown requested the transfer because Allen does not like "surplused" teachers and Brown was given a low TEM score because Allen is biased against "surplused" teachers. Brown did make two references to possible gender discrimination. (Req. for Admin. Transfer, ECF No. 43-8.) In his letter, Brown alleged Allen stated that, because Brown was "a man," he "shouldn't be having any discipline problems." (Id.) The letter also claimed that, on another occasion, Allen told Brown he should be on outside duty with the other men during school dismissal. (Id.)

"A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312-13 (6th Cir. 1989). The Magistrate Judge determined that, because Brown "could have had a reasonable, good faith belief that Allen's comments" and actions were discriminatory

toward male teachers, Brown engaged in protected activity under Title VII. (Rep., ECF No. 59 at 22.)

The Magistrate Judge found that Brown was unable to satisfy the remaining elements of a prima facie case of Title VII retaliation. (Id. at 23.) The Magistrate Judge noted that, "[a]lthough Brown asserts that the SCBOE knew of his request to MEA for an administrative transfer because the MEA sent the SCBOE a copy of the letter of request, there is no evidence in the record to support this. Further, Brown has failed to offer evidence that his letter to the MEA and his termination were causally connected." (Id.)

In his objection, Brown restates his allegation that the MEA told him that a copy of the transfer request would be sent to the SCBOE. (Obj., ECF No. 62 at 7.) The Court will review de novo whether the SCBOE received a copy of the transfer request.

The only evidence Brown cites is page 13 of Allen's deposition. (Id.) Brown asked Allen whether she receives copies of complaints made to the district. (Allen Dep., ECF No. 43-24 at 14.) Allen responded that "[i]t depends," and said she did not recall receiving a copy of any grievance Brown had filed. (Id.) A reasonable jury could not conclude from the evidence that the SCBOE received a copy of the transfer request sent to the MEA.

Although Brown objects that there is a causal connection between the transfer request letter and his termination, the objection focuses solely on whether the SCBOE received a copy of the transfer request. (Obj., ECF No. 62 at 7.) Brown does not cite any evidence of a causal connection between the transfer request letter and his termination. (Id.)

c. **Gender Discrimination Opposition**

Brown alleges that on January 7, 2013, he told Branch he felt harassed based on his status as a surplus teacher. (See Jan. 9, 2013 Correspondence, ECF No. 43-9.) The Magistrate Judge found no evidence that Brown ever complained to Branch about gender discrimination. The evidence showed only that Brown complained of being discriminated against as a "surplus teacher." (Rep., ECF No. 59 at 24. See Branch Aff. ¶ 11, ECF No. 12-4.) The Magistrate Judge determined that Brown had failed to satisfy the first element of a prima facie case of Title VII retaliation. (Rep., ECF No. 59 at 24.)

Brown objects, but seems to misunderstand the Magistrate Judge's reasoning. (Obj., ECF No. 62 at 8.) Brown cites Sixth Circuit case law addressing the form of complaints that are the basis for retaliation claims. (Id.) The Magistrate Judge's determination did not rely on the form of the complaint to Branch, but on the lack of evidence to support Brown's assertions that he complained of gender discrimination at all.

14

(Rep., ECF No. 59 at 24.)   Brown does not object to the Magistrate Judge's finding that there is a lack of evidence to support Brown's allegations.

The SCBOE's motion for summary judgment is GRANTED on Count One of Brown's complaint.

## B.  Common Law Retaliatory Discharge Claim

In Count Two of his complaint, Brown brings a common law claim for retaliatory discharge under Tennessee law.   (Pro Se Compl., ECF No. 1.)   The Magistrate Judge determined that the SCBOE was immune from liability on that claim.   (Rep., ECF No. 59 at 24-26.)

Brown objects, relying on Tenn. Code Ann. § 29-20-205. Section 29-20-205 pertains only to negligent acts or omissions. A common law retaliatory discharge claim requires intentional acts, not negligence. See Baines v. Wilson Cnty., 86 S.W.3d 575, 579 (Tenn. Ct. App. 2002).   The Governmental Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-201, provides governmental immunity to the SCBOE.

The SCBOE's motion for summary judgment on Brown's common law retaliatory discharge claim is GRANTED.

## C.  Section 1983 Claims

In Counts Three and Four of his complaint, Brown asserts claims under 42 U.S.C. § 1983.   (Pro Se Compl., ECF No. 1.) Section 1983 requires proof of two elements:   "(1) deprivation

of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law."[5] Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ., 542 F.3d 529, 534 (6th Cir. 2008) (citing McQueen v. Beecher Cmty. Sch., 433 F.3d 460, 463 (6th Cir.2006).

Brown asserts claims under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process has two components: substantive and procedural. Substantive due process "prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest." Lawrence v. Texas, 539 U.S. 558, 593 (2003) (citing Washington v. Glucksberg, 521 U.S. 702, 721 (1997)). Procedural due process provides a guarantee of fair procedure. Zinermon v. Burch, 494 U.S. 113, 125 (1990). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). Under § 1983, a deprivation of "life, liberty, or property" is only unconstitutional without due process of law. Id. Brown asserts a § 1983 claim under a procedural due process theory alleging

---

[5] The SCBOE does not dispute that it is a state actor.

the deprivation of his property and liberty interests. (Pro Se Compl., ECF No. 1.) He also brings a claim under a substantive due process theory alleging the deprivation of his liberty interest. (Id.)

**1.    Property Interest Claim (Count Three)**

Brown may succeed on a procedural due process claim by establishing that (1) he was deprived of a protected property interest and, (2) before being so deprived, he was not afforded the process due him. Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs, 641 F.3d 197, 216 (6th Cir. 2011). With respect to employment rights, "'the root requirement' of the Due Process Clause" is "'that an individual be given the opportunity for a hearing before he is deprived of any significant property interest.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)).

Under Tenn. Code Ann. §§ 49-5-511 and 49-5-512, Brown was entitled to "written notice" by the director of schools of the dismissal decision, "together with a copy of the charges and a copy of a form . . . advising [Brown] as to [his] legal duties, rights and recourse . . . ." § 49-5-511(a). After receiving notice, Brown was entitled to request a full and complete hearing before an impartial hearing officer. § 49-5-512(a). At such a hearing, parties have the right to be represented by

17

counsel, call and subpoena witnesses, and examine all witnesses. § 49-5-512(a)(4). After the hearing, the hearing officer submits findings of fact and conclusions of law, as well as a decision. After the hearing officer's decision, the teacher must exhaust administrative remedies and appeal the decision to the board of education within ten days of the hearing officer's issuance of written findings of fact, conclusions of law, and the decision. § 49-5-512(c)(1).

The Magistrate Judge found that on June 11, 2013, Brown received written notice of his suspension and that a charge of inefficiency and a recommendation of dismissal would be brought against him. (Rep., ECF No. 59 at 29-30.) On January 29 and 30, 2014, Brown was represented by counsel, presented evidence, and presented and cross-examined witnesses at a hearing before an impartial hearing officer. (Id. at 30.) The hearing officer issued her decision on March 10, 2014, and her findings of fact and conclusions of law on March 13, 2014. (Id.) Brown did not appeal the hearing officer's decision. The Magistrate Judge determined that Brown was afforded all process due him under Tennessee law and "did not exhaust his administrative remedies by appealing the hearing officer's decision."

In his objection, Brown claims that he did in fact appeal the hearing officer's decision. (Obj., ECF No. 62 at 10.) The

Court will review de novo whether Brown was afforded the process due him.

Brown offers no evidence to support his assertion that he appealed the hearing officer's decision. (Id.) Brown was afforded a hearing before an impartial hearing officer. At that hearing, he was represented by counsel, presented evidence, and presented and cross-examined witnesses. Even if Brown appealed the hearing officer's decision, he cites no evidence that he was not afforded the process due him under Tennessee law.

The SCBOE's motion for summary judgment on Count Three of Brown's complaint is GRANTED.

**2. Liberty Interest Claim (Count Four)**

As his substantive due process claim, Brown alleges that he was deprived of his liberty interest—his reputation in the educational community—because the SCBOE filed false charges of unprofessional conduct. (Pro Se Compl., ECF No. 1 ¶¶ 100-02.) Brown alleges that he is entitled to a "name-clearing hearing." (Id. ¶¶ 102.)

In the Sixth Circuit, a plaintiff must satisfy a five-factor test to prove that he was deprived of his liberty interest and is entitled to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance,

incompetence, neglect of duty or malfeasance. . . .
Third, the stigmatizing statements or charges must
be made public. Fourth, the plaintiff must claim that the
charges made against him were false. Lastly, the public
dissemination must have been voluntary.

Quinn v. Shirey, 293 F.3d 315, 320 (6th Cir. 2002) (quoting

Brown v. City of Niota, 214 F.3d 718, 722-23 (6th Cir.2000)).

The Magistrate Judge found no evidence that the SCBOE made
any statements about "anything other than Brown's inadequate
performance or incompetence as a teacher." (Rep., ECF No. 59 at
31-32.) There was not "any proof that the statements were made
public, other than [Brown's] own unsubstantiated allegations
based on hearsay."[6] (Id. at 32.)

Brown objects to the Magistrate Judge's findings,
reasserting his previous allegation that the statements were
broadcast to the public. (Obj., ECF No. 62 at 11.) The Court
will review de novo whether a reasonable jury could conclude
that the statements were broadcast to the public.

There is no evidence in the record, and Brown's objection
cites no additional evidence, that the statements were made
public. (Id.) Based on the evidence, no reasonable jury could
conclude that the statements were made public.

Brown does not object to the Magistrate Judge's finding
that there is no evidence of any SCBOE statements about anything

---

[6] Brown alleges that the SCBOE meeting was "broadcast on television and radio
from the Plaintiff's understanding." (Pl.'s Resp. in Opp'n to Def.'s Mot.
for Summ. J., ECF No. 43 at 7.) No evidence in the record supports that
allegation.

other than Brown's inadequate performance or incompetence as a teacher.  The SCBOE's motion for summary judgment on Count Four of Brown's complaint is GRANTED.

**D.  Gender Discrimination Claim**

In Count Five of his complaint, Brown alleges that he was discriminated against based on his gender in violation of Title VII.  (Pro Se Compl., ECF No. 1.)  Brown brings claims of disparate treatment, disparate impact, and hostile environment.

**1.  Disparate Treatment**

In a disparate treatment action, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees."  White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008).  Where, as here, a plaintiff is not a member of a protected class, but claims reverse discrimination, the plaintiff must "demonstrate 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'"  Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 614-15 (6th Cir. 2003).

Once a plaintiff has established a prima facie case of gender discrimination, the burden shifts to the defendant to

"articulate some legitimate, nondiscriminatory reason" for its treatment of the plaintiff. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "If the defendant meets that burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." Sutherland, 344 F.3d at 615.

The Magistrate Judge found that "Brown [had failed] to present any evidence either that the SCBOE is the 'unusual employer who discriminates against the majority,' or that there were similarly situated female employees treated more favorably than he was." The Magistrate Judge determined that, "[e]ven were Brown able to establish a prima facie case of discriminatory treatment, the SCBOE has offered a legitimate nondiscriminatory reason for its termination of Brown—Brown's low TEM scores—and Brown has not come forth with evidence to show pretext." (Rep., ECF No. 59 at 36.)

Brown objects. The Court will consider de novo whether a reasonable jury could conclude there was disparate treatment. Brown's objection restates his earlier arguments that male teachers were treated differently than female teachers; he cites only his response in opposition to the SCBOE's motion for summary judgment. (Obj., ECF No. 62 at 12.) He cites no evidence in the record that the SCBOE discriminates against male employees. (Id. at 12-13.) Brown argues that a secretarial

employee, Rachel Williams, was terminated from Charjean Elementary, but allowed to continue to work at another Shelby County school. (Id.) Brown argues that the SCBOE's decision to allow Rachel Williams to work at a different school is evidence of disparate treatment between male and female employees. Rachel Williams did not replace Brown, and nothing in the record suggests that Williams, a secretarial employee, and Brown, a tenured teacher, were similarly situated. Brown's argument, even if supported by facts in the record, would not support a claim of disparate treatment.

Brown also challenges the Magistrate Judge's finding that there is no evidence of pretext. (Id.) He restates the pretext argument discussed _supra_ in relation to Brown's Title VII retaliation claim. (See _supra_ Subsection IV.A.1.) For the same reasons, Brown's pretext argument fails here.

## 2. Disparate Impact

"The disparate impact theory requires a plaintiff to demonstrate that a facially neutral employment practice falls more harshly on one group than another and that the practice is not justified by business necessity. . . . [P]roof of discriminatory intent is not required." Dunlap v. Tennessee Valley Auth., 519 F.3d 626, 629 (6th Cir. 2008) (citing Rowe v. Cleveland Pneumatic Co., 690 F.2d 88, 92 (6th Cir.1982)). A plaintiff may establish a prima facie case by "(1) identif[ying]

a specific employment practice to be challenged; and (2) through relevant statistical analysis prov[ing] that the challenged practice has an adverse impact on a protected group." Id.

The Magistrate Judge determined that Brown had failed to establish a prima facie case of disparate impact. (Rep., ECF No. 59 at 36-37.) Specifically, the Magistrate Judge found that Brown's allegations that men were placed on outside duty and assigned to teach classes of predominantly African American students were not supported by any relevant statistical analysis showing an adverse impact on male teachers. (Id.)

Brown objects generally, but does not challenge the Magistrate Judge's finding of a lack of analysis proving an actual adverse impact on a protected group. (Obj., ECF No. 62 at 13.) Brown simply restates his earlier assertions and argues that, in his experience, the African American students at Charjean Elementary have more behavioral problems. (Id.) Even if Brown had provided evidence to that effect, there is no evidence in the record demonstrating any adverse impact on male teachers as a result of the practices he alleges.

## 3. Hostile Work Environment

To succeed on a Title VII hostile work environment claim, Brown must show that: "(1) [he] was a member of a protected class; (2) [he] was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the

charged sexual harassment created a hostile work environment; and (5) the employer is liable." Randolph, 453 F.3d at 733. To establish a hostile work environment, Brown must meet both objective and subjective tests; "in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." Id. In analyzing whether a hostile work environment exists, the Court must "consider the totality of the circumstances" and determine "whether the harassment was sufficiently severe and pervasive." Id.

The Magistrate Judge determined that:

> Brown fails to show that the harassment he experienced—Allen's comments that "you a man," that he should be able to handle his classroom, and that he should be on outside duty—is severe and pervasive enough to create a hostile work environment. Even if true, these scattered references to Brown's gender are not of the frequency, severity, or level of offensiveness such that they altered the conditions of Brown's employment and created an objectively abusive work environment. At most, they amounted to "mere offensive utterances."

(Rep., ECF No. 59 at 36-37.)

Brown objects to the Magistrate Judge's determination that the alleged conduct was merely offensive utterance. (Obj., ECF No. 62 at 14.) Brown does not cite any evidence the Magistrate Judge did not consider. (Id.) The Court will review this issue de novo.

Courts consider the following factors when determining whether a workplace environment is sufficiently hostile or abusive to support a sexual harassment claim under Title VII: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (internal quotation marks omitted). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998)). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." Id.

The comments Allen allegedly made to Brown are not extreme. Three comments that are not objectively extreme or threatening do not rise to the level of discriminatory conduct protected by Title VII. These comments are mere offensive utterances. Even if the conduct were severe and pervasive, Brown has not cited any evidence showing that the SCBOE had any knowledge of Allen's comments. The Supreme Court has held that both knowledge and inaction are required to hold an employer liable for harassment by its employee. Faragher, 524 U.S. at 789.

The SCBOE's motion for summary judgment on Count Five of Brown's complaint is GRANTED.

## E. Libel Claim

In Count Six of his complaint, Brown alleges that Allen and Kecia Helminski ("Helminski"), a fellow teacher,[7] made false statements in their assessments of Brown's performance. (<u>Pro Se</u> Compl., ECF No. 62 ¶¶ 109-11.) Brown asserts that the SCBOE is liable for those false statements because of its negligent supervision and hiring. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 10, ECF No. 43.)

Tenn. Code Ann. § 29-20-205 provides:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: . . .
>
> (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights; . . .

The Magistrate Judge determined that, "[b]ecause the SCBOE is immune from Brown's libel claim, summary judgment should be granted as to this claim in favor of the SCBOE." (Rep., ECF No. 59 at 39.)

---

[7] During the 2012-2013 school year, Brown chose to enter the Peer Assistance Review ("PAR") program. (Rep., ECF No. 59 at 7.) Brown was assigned fellow teacher Kecia Helminski as his peer consultant. (<u>Id.</u>)

Brown objects. The Court will review governmental immunity de novo for purposes of this claim. In his objection, Brown cites Tenn. Code Ann. § 29-20-210(b) as contrary authority. (Obj., ECF No. 62 at 14.) Section 29-20-310(b) states, "No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for health care liability brought against a health care practitioner." Id. That section has no effect on § 29-20-205, which clearly states that governmental entities are immune from libel suits.

The SCBOE's motion for summary judgment on Count Six of Brown's Complaint is GRANTED.

## F.   Aiding and Abetting Tort Claim

In Count Seven of his complaint, Brown alleges that Allen and Helminski each "knew that [the other] was engaged in tortious conduct" and they "assisted . . . or encouraged each other in accomplishing" tortious acts. (Pro Se Compl., ECF No. 62 ¶¶ 112-13.)

The Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-301, codifies the common law tort of aiding and abetting. Section 4-21-301 makes it "a discriminatory practice for a person or for two (2) or more persons to: . . . (2) Aid, abet, incite, compel or command a person to engage in any of the acts

28

or practices declared discriminatory in this chapter." § 4-21-301. "Aiding and abetting" as defined by Tennessee common law, requires that the "defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts." <u>Carr v. United Parcel Serv.</u>, 955 S.W.2d 832, 836 (Tenn. 1997).

The Magistrate Judge determined that Brown "has not brought forth any evidence to show that the elements of the aiding and abetting tort are satisfied." (Rep., ECF No. 59 at 40-41.) The Magistrate Judge found that, even if the alleged conduct occurred, "Brown does not argue that these acts of defamation were discriminatory within the meaning of the THRA, which bars discrimination for race, creed, color, religion, sex, age, or national origin." (<u>Id.</u> at 41.)

Brown objects only to the Magistrate Judge's finding that the evidence was insufficient to prove the elements of an aiding and abetting tort claim. (Obj., ECF No. 62 at 16.) Brown restates his previous arguments without citing any evidence to support them. (<u>Id.</u>) There is no evidence of the alleged tortious conduct, that Allen or Helminski knew of the other's conduct, or that either "gave substantial assistance or encouragement to [the other] in their acts." Brown does not object to the Magistrate Judge's finding that the alleged

defamation was not discriminatory within the meaning of the THRA.

The SCBOE's motion for summary judgment on Count Seven of Brown's Complaint is GRANTED.

## G.  Civil Conspiracy Claim

In Count Eight of his compliant, Brown alleges that Allen and Helminski engaged in a civil conspiracy by forging documents in an effort to terminate his employment.  (Pro Se Compl., ECF No. 62 ¶¶ 114.)  Civil conspiracy requires "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff."  Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002). Where, as here, "the conspiratorial conduct is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment," a civil conspiracy claim cannot succeed.  Id. at 703-04.

The Magistrate Judge determined that, "[b]ecause Brown has not even alleged or presented evidence that either Helminski or Allen were acting outside the scope of their employment in pursuit of a personal purpose, SCBOE is entitled to judgment as a matter of law."  (Rep., ECF No. 59 at 43.)

Brown objects to the Magistrate Judge's finding that neither Allen nor Helminski acted for personal reasons. (Obj., ECF No. 62 at 17.) The Court will review de novo whether a reasonable jury could find that Allen and Helminski acted for personal reasons.

Brown argues that both Allen and Helminski acted for personal reasons. (Id.) He asserts that if he were fired, Allen would no longer have anyone complaining to her superiors and Helminski would be "in good favor with the boss." (Id.) Brown does not cite any evidence supporting his theory. (Id.) A reasonable jury could not conclude that Allen and Helminski acted for personal reasons.

Even if Allen and Helminski were acting for personal reasons, there could be no conspiracy on these facts, which include no evidence of forgery. The SCBOE's motion for summary judgment on Count Eight of Brown's complaint is GRANTED.

**H.   COBRA Claim**

Neither Brown nor the SCBOE objects to the Magistrate Judge's findings with respect to the COBRA claim. The Magistrate Judge's recommendation is ADOPTED and both parties' motions for summary judgment on Count Nine of Brown's complaint are DENIED.

**I.   Negligent Supervision and Negligent Training Claims**

In Counts Ten and Eleven of his complaint, Brown alleges that the SCBOE was negligent in its supervision and training of Allen and Helminski. (Pro Se Compl., ECF No. 62 ¶¶ 119-20.) Under Tennessee law, a claim of negligent hiring, supervision, and retention may be maintained by establishing, "in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." Doe v. Catholic Bishop for Diocese of Memphis, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008); see also Brown v. Mapco Exp., Inc., 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012) (in which plaintiff sued Mapco for "a billion—with a 'b'—dollars" under the same theory). A negligence claim requires proof of a duty of care owed to the plaintiff, breach of that duty by the defendant, injury or loss, actual causation, and proximate causation. Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 52 (Tenn. 2004).

The Magistrate Judge determined that Brown had "failed to present any evidence establishing the elements of his underlying negligence claim." (Rep., ECF No. 59 at 48.) Brown objects to the Magistrate Judge's determination that the evidence did not show a breach of duty or that Allen and Helminski were unfit for their jobs. The Court will review this count de novo.

Brown's objection restates his conclusory argument that Allen and Helminski falsified his evaluations. (Obj., ECF No. 62 at 18-19.) He relies on his theory that the TEM score for

2012-2013 was fraudulently changed.  (Id.)  As discussed supra, that argument is unsupported.  (See supra Subsection IV.A.1.) Even assuming that Allen or Helminski owed Brown a duty of care in evaluating him, there is no evidence that either breached that duty.

Assuming arguendo that Brown could establish the elements of a claim for negligence, he does not cite evidence in the record that the SCBOE knew or should have known Allen and Helminski were unfit for their jobs.  The SCBOE's motion for summary judgment on Counts Ten and Eleven of Brown's complaint is GRANTED.

## J.    Fraud Claim

In Count Thirteen of his complaint, Brown alleges that the SCBOE is liable for common law fraud because Allen forged four letters about him, Helminski claimed in a letter she wrote him that he had failed to follow teaching advice she gave him, and Helminski fraudulently overstated the length of time she observed and graded him in the classroom.  (Pro Se Compl., ECF No. 62 ¶¶ 124-26.)  Under Tennessee law, fraud requires "(1) an intentional misrepresentation of material fact, (2) knowledge of the representation's falsity, . . . (3) an injury caused by reasonable reliance on the representation," and that (4) "the misrepresentation involved a past or existing fact."  Dobbs v. Guenther, 846 S.W.2d 270, 274 (Tenn. 1992).

The Magistrate Judge found that:

> Brown has not come forth with proof that the letters
> complained of were falsified by Allen and Helminski,
> that Helminski overstated the length of time she
> evaluated Brown's classroom, or that Helminski falsely
> stated that she gave Brown teaching strategies that he
> failed to adopt. As with previous claims, Brown relies
> on his own declaration, which only restates his
> allegations in more detail without outside evidentiary
> support. (See Brown Decl. ¶¶ 24, 36-40, ECF No. 43-1.)
> This does not satisfy his burden of showing that the
> letters were fraudulent. Further, there has been no
> showing that the SCBOE knew or had reason to know of
> these alleged inaccuracies. Finally, Brown cannot
> establish that he relied on alleged fraudulent
> statements to his detriment.

(Rep., ECF No. 59 at 50.)

Brown objects to the finding that the evidence does not support a finding that the letters were false. He also objects to the Magistrate Judge's finding that there was insufficient evidence to show that he detrimentally relied on the alleged fraudulent statements. (Obj., ECF No. 62 at 20.) The Court will review these issues de novo.

Brown relies again on his argument about the changed TEM score for the 2012-2013 school year. (Id.) As discussed supra, that argument is unsupported. (See supra Subsection IV.A.1.) Brown also asserts that the declarations of three parents, whose children were in Brown's class, prove that Brown implemented the teaching strategies Helminski suggested. (Obj., ECF No. 62 at 20; see also Parent Decl.'s, ECF No. 43-7.) The declarations do not support Brown's allegations. All three declarations are

34

identically worded. They contain no individualized statements, and each is only five sentences long. There is no evidence that any of the parents observed Brown's teaching. There is no evidence of any of the other alleged fraudulent conduct.

Brown alleges that he was "enticed . . . to participate in the [PAR] program" when he was told (he does not allege who told him) that if he participated in the program, Allen "would not do the remaining two evaluations." (Pro Se Compl., ECF No. 62 ¶ 51; see also Obj., ECF No. 62 at 20.) Brown claims that, because this promise was made, he entered the program and was eventually terminated, supposedly satisfying the detrimental reliance element. (Obj., ECF No. 62 at 20.) There is no evidence that this promise was made. Even if there were such evidence, the causal connection between the alleged promise and the detriment is tenuous at best.

Brown does not object to the Magistrate Judge's determination that there is no evidence the SCBOE knew or had reason to know of the alleged inaccuracies. (Obj., ECF No. 62 at 20.) The SCBOE's motion for summary judgment on Count Thirteen of Brown's complaint is GRANTED.

## K. Breach of Contract Claim

In Count Twelve of his complaint, Brown alleges that the SCBOE "maliciously breached [his employment] contract based on fraudulent letters submitted by Tomeka Allen and Ms. Helminski."

(Pro Se Compl., ECF No. 62 ¶ 122.)  Under Tennessee law, "[t]he
essential elements of any breach of contract claim include (1)
the existence of an enforceable contract, (2) nonperformance
amounting to a breach of the contract, and (3) damages caused by
the breach of the contract."  Ingram v. Cendant Mobility Fin.
Corp., 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (internal
quotation marks omitted).

The Magistrate Judge determined that, because Brown relied
on his underlying claim of fraud to prove the breach element,
and because the fraud claim did not survive, the breach of
contract claim could not succeed.  (Rep., ECF No. 59 at 50-51.)
In his objection, Brown seems to suggest that there may be an
alternate theory of breach, but offers no argument as to what
that theory is.  (Obj., ECF No. 62 at 20.)  He restates his
argument about the changed TEM score for the 2012-2013 school
year.  (Id.)  As discussed supra, that argument is unsupported.
(See supra Subsection IV.A.1.)

The SCBOE's motion for summary judgment on Count Twelve of
Brown's complaint is GRANTED.

## L.   Implied Covenant of Good Faith and Fair Dealing Claim

In Count Fourteen of his complaint, Brown alleges that the
SCBOE breached an implied covenant of good faith and fair
dealing based on "false allegations and false letters."  (Pro Se
Compl., ECF No. 62 ¶¶ 127-28.)  The Magistrate Judge found that,

under Tennessee law, there is no cause of action in tort for breach of an implied covenant of good faith and fair dealing. (Rep., ECF No. 59 at 50-51.) In Tennessee, "good faith or the lack of it may be an element or circumstance of recognized torts, or breaches of contracts, but it does not appear that good faith or the lack of it is, standing alone, an actionable tort." Solomon v. First Am. Nat'l Bank of Nashville, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989).

Brown objects generally, but does not offer any contrary authority. (Obj., ECF No. 62 at 21-22.) This claim merely restates Brown's earlier fraud arguments. To the extent that a breach of an implied covenant of good faith and fair dealing may be used to prove a breach of contract claim, his arguments are unsupported.

The SCBOE's motion for summary judgment on Count Fourteen of Brown's complaint is GRANTED.

## M. Tennessee Teacher Tenure Act Claim

In Count Fifteen of his complaint, Brown alleges that he was not afforded a timely tenure hearing under the Tennessee Teacher Tenure Act, Tenn. Code Ann. § 49-5-512. (Pro Se Compl., ECF No. 62 ¶¶ 129-31.) Brown alleges that, "although the provision does not state a time for the Board of Education to take action. [sic] Its [sic] clear that the lawmakers did not

intend for the process to take two years or longer." (Id. ¶ 130.)

The Magistrate Judge determined that:

> [t]he undisputed facts show that the SCBOE complied with the requirements of § 49-5-512 by providing him a tenure hearing on January 29-30, 2014 before an impartial hearing officer, in which he had the opportunity to be represented by counsel, present and cross-examine witnesses, and present and challenge evidence. The hearing was held within three months of the time the charges of inefficiency were filed. There is no time requirement imposed by the statute.

(Rep., ECF No. 59 at 52.)

Brown objects to the Magistrate Judge's finding that the hearing was timely. (Obj., ECF No. 62 at 22.) The Court will review this issue de novo. Brown argues that the hearing "was around 7 months after the Plaintiff had been suspended from his teaching position." (Id.) Brown does not explain how he could have had a tenure hearing before the tenure charges had been filed against him. Because § 49-5-512 contains no time requirements, Brown's timeliness argument cannot succeed.

Brown also objects to the determination that the hearing officer was impartial. (Obj., ECF No. 62 at 22-23.) The Court will review this issue de novo. Brown asserts that the hearing officer was not impartial because she had "served as the hearing officer for . . . several other teachers." (Id. at 22.)

Section 49-5-512 provides that "'impartial' means that the selected hearing officer shall have no history of employment

38

with the board or director of schools, no relationship with any board member and no relationship with the teacher or representatives of the teacher." Even if Brown's allegations about the hearing officer's previous experience were supported by evidence, Brown does not cite any evidence that the hearing officer was ever an employee of the SCBOE or that she was otherwise partial within the meaning of § 49-5-512.

The SCBOE's motion for summary judgment on Count Fifteen of Brown's complaint is GRANTED.

## N. Tennessee Public Protection Act Claim

In Count Sixteen of his complaint, Brown alleges that the SCBOE violated the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304. (Pro Se Compl., ECF No. 62 ¶¶ 132-33.) Brown alleges that he reported illegal activities—corporal punishment and sealed windows at Charjean Elementary—and the SCBOE terminated him in retaliation. (Id.)

Section 50-1-304 protects employees from being terminated "solely for refusing to participate in, or refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). For purposes of the statute, "[i]llegal activities" mean "activities that are in violation of the criminal or civil code of the state or the United States or any regulations intended to protect the public health, safety, or welfare." § 50-1-304(a)(3). To succeed on this claim, Brown "must establish

(1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, 'illegal activities' as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination." Franklin v. Swift Transp. Co., 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006).

The burden of establishing a prima facie case for retaliatory discharge under the TPPA is on the plaintiff. § 50-1-304(g). "If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate non-discriminatory reasons existed for the plaintiff's discharge." Id. If the defendant satisfies that burden, "the burden shifts [back] to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation." Id.

The Magistrate Judge made the following determination:

Assuming for the sake of analysis that Brown did report activities that are illegal within the meaning of the TPPA, he has not brought forth any evidence to establish the element of sole or exclusive causal connection between his reporting of these activities and his termination. Indeed, the undisputed facts show that Brown was terminated for inefficiency based on his low TEM scores. A subsequent tenure hearing, wherein evidence and witnesses were presented on Brown's charge of inefficiency, upheld this result and found just cause for his termination on this basis.

> Significantly, Brown's first low TEM scores were earned before Brown was assigned to Charjean Elementary and before he allegedly reported any allegedly illegal activities. Thus, there is unrebutted evidence of a non-pretextual reason for Brown's termination.

(Rep., ECF No. 59 at 54.)

Brown objects to the Magistrate Judge's finding that there is insufficient evidence to show a causal connection. (Obj., ECF No. 62 at 23-24.) He also objects to the determination that the evidence is not sufficient to prove that the SCBOE's stated reason was mere pretext. (Id.) The Court will review these issues de novo.

Brown alleges that he reported the allegedly illegal activities on January 7, 2013, and was given a negative evaluation on January 8, 2013. (Id. at 24.) Brown claims that he then started "receiving disciplinary letters ultimately [sic] he was dismissed." (Id.) That Brown allegedly reported illegal activities before he received negative evaluations and was disciplined is not sufficient to support a claim under the TPPA. Brown must establish an exclusive causal relationship. Unrefuted evidence in the record shows that the evaluations were based, at least in part, on Brown's teaching ability and performance. The evaluations were reviewed before an impartial hearing officer. Brown was represented by counsel, presented and cross-examined witnesses, and presented and challenged

evidence. The hearing officer upheld the charges. Brown's objection does not cite any additional evidence that supports an exclusive causal relationship.

Brown also argues that the SCBOE's stated reason for Brown's termination—inefficiency—"was not the true reason for the . . . termination." (Id.) As discussed supra, no reasonable jury could find that the SCBOE's stated reason for Brown's termination was mere pretext. (See supra Subsection IV.A.1.) In his objection, Brown cites no evidence to prove pretext.

The SCBOE's motion for summary judgment on Count Sixteen of Brown's complaint is GRANTED.

## V. CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report is ADOPTED. The SCBOE's motion for summary judgment is GRANTED in part and DENIED in part. The motion is GRANTED on all claims except Brown's COBRA claim. The Motion on the COBRA claim is DENIED. Brown's cross-motion for summary judgment is DENIED.

So ordered this 15th day of September, 2014.

/s Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE